# EXHIBIT A

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Joshua Peterson, Jennifer Miller, Alicia Griffin, Katharine Stone, and Jennifer Schauls, | Case Type:  Employment |
| | Court File No. _____ |
| Plaintiffs, | |
| vs. | |
| Premier Diagnostic Imaging, Inc., Integrity Medical Imaging, LLC, Minnesota Medical Imaging, LLC, Kim Algoo a/k/a Khemwattie Singh-Algoo, Amy Gaston, Mark Burgmeier, and Neeraj B. Chepuri, | |
| Defendants. | |

---

## SUMMONS

---

THIS SUMMONS IS DIRECTED TO:

Defendant Premier Diagnostic Imaging, Inc., 10800 Lyndale Avenue South, Suite 150, Bloomington, Minnesota 55420;

Defendant Integrity Medical Imaging, LLC, 1625 #A Hennepin Avenue, Minneapolis, Minnesota 55403;

Defendant Minnesota Medical Imaging, LLC, 2929 Chicago Avenue South, #140, Minneapolis, MN 55407 and 2110 Nicollet Avenue South, Suite 103, Minneapolis, MN 55404;

Defendant Kim Algoo, 13240 Quebec Avenue, Savage, Minnesota, 55378;

Defendant Amy Gaston, 7408 Washburn Avenue S., Minneapolis, MN 55423;

Defendant Mark Burgmeier, 12778 Grouse Street NW, Coon Rapids, MN 55448; and

Defendant Neeraj B. Chepuri, 1221 Nicollet Ave, Apt 600, Minneapolis, MN 55403.

1.      **YOU ARE BEING SUED.** The Plaintiffs have started a lawsuit against you. The Plaintiffs' Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2.      **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at: 8000 Flour Exchange Building, 310 Fourth Avenue South, Minneapolis, Minnesota 55415.

3.      **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4.      **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5.      **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6.      **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: May 8, 2013.                    TREPANIER & MACGILLIS P.A.

                                       By: _____
                                           Craig W. Trepanier, Atty. Reg. No. 250776
                                           Kelly M. Fiege, Atty. Reg. No. 0392178
                                           8000 Flour Exchange Building
                                           310 Fourth Avenue South
                                           Minneapolis, MN  55415
                                           Phone:  612-455-0500
                                           Fax:  612-455-0501
                                           www.trepanierlaw.com

                                       **ATTORNEYS FOR PLAINTIFFS**
                                       **JOSHUA PETERSON, JENNIFER MILLER,**
                                       **ALICIA GRIFFIN, KATHARINE STONE,**
                                       **AND JENNIFER SCHAULS**

                          **ACKNOWLEDGEMENT**

        The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.211 sanctions
may be awarded to the party or parties against whom the allegations in this pleading are asserted.

Dated: May 8, 2013                     By: _____
                                           Kelly M. Fiege

3

STATE OF MINNESOTA                                           DISTRICT COURT

COUNTY OF HENNEPIN                                  FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Joshua Peterson, Jennifer Miller, Alicia Griffin, Katharine Stone, and Jennifer Schauls, | Case Type:  Employment |
| | Court File No. _____ |
| Plaintiffs, | |
| vs. | |
| Premier Diagnostic Imaging, Inc., Integrity Medical Imaging, LLC, Minnesota Medical Imaging, LLC, Kim Algoo a/k/a Khemwattie Singh-Algoo, Amy Gaston, Mark Burgmeier, and Neeraj B. Chepuri, | |
| Defendants. | |

## COMPLAINT

Plaintiffs Joshua Peterson (**"Peterson"**), Jennifer Miller (**"Miller"**), Alicia Griffin (**"Griffin"**), Katharine Stone (**"Stone"**), and Jennifer Schauls (**"Schauls"**) (collectively referred to as **"Plaintiffs"**), as and for their Complaint against Defendants Premier Diagnostic Imaging, Inc. (**"PDI"**), Integrity Medical Imaging, LLC (**"IMI"**), Minnesota Medical Imaging, LLC (**"MMI"**), Kim Algoo (also known as Khemwattie Singh-Algoo) (**"Algoo"**), Amy Gaston (**"Gaston"**), Mark Burgmeier (**"Burgmeier"**), and Neeraj B. Chepuri (**"Chepuri"**) (collectively PDI, IMI, MMI, Algoo, Gaston, Burgmeier, and Chepuri are the **"Defendants"**), state and allege as follows:

### The Parties

1.      Peterson is a natural person residing at 67 East Golden Lake Road, Circle Pines, MN 55014.

2.     Miller is a natural person residing at 5271 Buchanan Street, Fridley, MN 55421.

3.     Griffin is a natural person residing at 7361 Adair Court N., Brooklyn Park, MN 55443.

4.     Stone is a natural person residing at 4041 44th Ave S., Minneapolis, MN 55406.

5.     Schauls is a natural person residing at 6532 Douglas Dr N., Brooklyn Park, MN 55429.

6.     Upon information and belief, PDI is a Minnesota corporation with its principal place of business at 10800 Lyndale Avenue South, Suite 150, Bloomington, MN 55420.

7.     Upon information and belief, IMI is a Minnesota limited liability company with its principal place of business at 1625 #A Hennepin Avenue, Minneapolis, MN 55403.

8.     Upon information and belief, MMI is a Minnesota limited liability company with its registered office at 2929 Chicago Avenue South, #140, Minneapolis, MN 55407 and principal place of business at 2110 Nicollet Avenue South, Suite 103, Minneapolis, MN 55404.

9.     Upon information and belief, Algoo is a natural person residing at 13240 Quebec Avenue, Savage, Minnesota, 55378.

10.    Upon information and belief, Gaston is a natural person residing at 7408 Washburn Avenue S., Minneapolis, MN 55423.

11.    Upon information and belief, Burgmeier is a natural person residing at 12778 Grouse Street NW, Coon Rapids, MN 55448.

12.    Upon information and belief, Chepuri is a natural person residing at 1221 Nicollet Avenue, Suite 600, Minneapolis, MN 55403.

## Jurisdiction and Venue

13.    This Court has personal jurisdiction over Defendants in that Defendants reside in and/or do business in this District and the claims alleged in this Complaint arose in this District.

2

14.     This action is properly venued in Hennepin County pursuant to Minn. Stat. §
542.09 in that Defendants Chepuri and Gaston reside in Hennepin County and the cause of
actions arose in Hennepin County.  Upon information and belief, Defendants PDI, IMI, and MMI
have offices, resident agents, or business places in Hennepin County and, therefore, reside in
Hennepin County within the meaning of Minn. Stat. § 542.09.

<u>Factual Allegations</u>

15.     PDI provided portable radiological imaging services including x-rays and
ultrasounds.  Upon information and belief, PDI is no longer in business.

16.     IMI provided portable radiological imaging services including x-rays and
ultrasounds.  Upon information and belief, IMI is no longer in business.

17.     MMI provides portable radiological imaging services including x-rays and
ultrasounds.

18.     Algoo was the President and Chief Executive Officer of PDI.  Algoo was the
President of IMI.  Currently, Algoo is the President and Chief Executive Officer of MMI.

19.     Gaston was the Director of Marketing & Strategic Alliances of PDI.  Gaston was
the Executive Vice President of IMI.  Currently, Gaston is the Executive Vice President of MMI.

20.     Burgmeier was the Vice President of Operations of PDI.

21.     Upon information and belief, Chepuri is an owner of IMI and MMI.

22.     Consulting Radiologists, Ltd. (**"Consulting Radiologists"**), is a Minnesota
corporation that provides radiological reading services.  Chepuri is the Chief Executive Officer
of Consulting Radiologists.

23.     Upon information and belief, the primary radiological reading provider for PDI,
IMI, and MMI is Consulting Radiologists.  Upon information and belief, Consulting Radiologists
has received substantial revenue from PDI, IMI, and MMI for providing these services.

3

Consulting Radiologists would not be in a position to generate this revenue but for the fact that ultrasound, x-ray, and echo technicians such as Plaintiffs provided services to PDI, IMI, and MMI, thereby creating radiological results to be interpreted by Consulting Radiologists.

A.    **Unpaid Wages Owed to Peterson**

24.    Peterson began working at PDI on or about May 9, 2011 as an x-ray technician. As part of his duties, Peterson traveled to patients as directed by PDI and performed radiological tests on patients.

25.    PDI agreed to pay Peterson $16.50 an hour from May 9, 2011, to August 20, 2011 when Peterson received a raise to $18.00 an hour.  Burgmeier verbally informed Peterson of this raise.

26.    PDI would only pay Peterson his hourly rate for the first 8 hours of his workday. For any work Peterson performed after the first 8 hours, PDI paid Peterson $25.00 for each facility to which he traveled to perform radiological services, regardless of the number of exams performed.

27.    PDI agreed to pay Peterson $25.00 a day for being on-call during weekdays and $50.00 a day for being on-call during weekend days.

28.    PDI agreed to reimburse Peterson for his mileage at $0.50 per mile.

29.    PDI had bi-monthly pay periods, with actual payment scheduled for disbursement to employees on the second Friday after the end of each pay period.

30.    From the beginning of Peterson's employment, PDI was late and unreliable in paying Peterson.

31.    Peterson's first pay period ended on May 14, 2011.  Although Peterson was scheduled to receive his paycheck for this period on May 27, 2011, PDI did not pay him until July 14, 2011.

32.     Every subsequent payment that Peterson received from PDI was also late, sometimes taking up to five months.  For example, for the pay period ending on September 17, 2011, Peterson was not paid until February 16, 2012.  PDI paid Peterson in cash rather than by check on this occasion.

33.     In several instances during Peterson's employment, Algoo told Peterson verbally and by text message to cash the checks issued by PDI immediately.

34.     Four checks issued by PDI to Peterson bounced, which forced Peterson to incur a penalty from his bank.

35.     In a letter dated January 6, 2012, Algoo told Peterson not to cash a check until he was later notified to do so and Algoo told Peterson that she needed to secure a loan for a "cash infusion" so that PDI would "be able to take care of" its employees.  A true and correct copy of this letter is attached hereto as Exhibit A.

36.     Near the beginning of 2012, Peterson approached Burgmeier about PDI's late and erratic payments.  Burgmeier told Peterson that the late paychecks were a complication stemming from PDI's rapid expansion.  Burgmeier assured Peterson that PDI would pay Peterson, and Peterson relied on these promises to continue to provide services at PDI.

37.     PDI stopped paying wages to Peterson altogether on or about February 16, 2012, with the last paycheck representing payment of the October 2, 2011 pay period.

38.     Peterson made repeated demands to Burgmeier and Algoo via text message for payment of his wages as he continued to work.  Despite these requests, PDI failed to pay Peterson his wages.

39.     Meanwhile, despite PDI's failure to pay, and relying on the promises of Burgmeier and Algoo to pay him wages, Peterson continued to work for PDI until April 6, 2012.

Peterson worked more than forty (40) hours and (48) hours in certain workweeks during this time period.

40.    As a result of PDI's failure to pay Peterson, Peterson tendered his resignation effective on April 13, 2012.

41.    Peterson made a written demand on PDI on October 1, 2012 for payment of his unpaid wages.  A true and correct copy of this demand letter is attached hereto as <u>Exhibit B</u>.

42.    Peterson remains unpaid for 1,927.3 hours of work at PDI, consisting of 1,707.3 regular working hours, 220 overtime hours, and $9,725.00 in unpaid on-call (or "no call" fees) and per-facility fees (or "call pay").  A spreadsheet outlining Peterson's hours and wages from May 9, 2011 to April 6, 2012 is attached hereto as <u>Exhibit C</u>.

43.    Despite Peterson's repeated requests, PDI has failed to pay him a total of $42,475.43 in wages and $7,125.00 in unpaid mileage reimbursements for the time period of May 9, 2011 to April 6, 2012.

**B.    <u>Unpaid Wages Owed to Miller</u>**

44.    During the week of February 20, 2012, Burgmeier and Algoo interviewed Miller for the position of ultrasound technician for PDI.

45.    During the interview, Burgmeier informed Miller that PDI would pay her $75.00 per ultrasound job plus $25.00 for each day she was on call.

46.    Burgmeier also told Miller that PDI would reimburse Miller for her mileage at $0.50 per mile.

47.    Miller began working for PDI as an ultrasound technician on or around February 27, 2012.  As part of her duties, Miller traveled to patients as directed by PDI and performed radiological tests on patients.

48.     From the beginning of Miller's employment, PDI was late and unreliable in paying her.

49.     Miller only received payment in full for two pay periods while employed by PDI. She was paid for the period ending March 3, 2012 and the period ending April 13, 2012.

50.     Miller first requested payment of her wages in a conversation with Algoo around the time her first scheduled paycheck from PDI was supposed to be issued in March 2012.

51.     Algoo stated that payment might be late due to certain problems with the Internal Revenue Service ("IRS").

52.     Thereafter, Miller had conversations with Algoo in person, over the phone, and via text message approximately every two weeks (when a new payment was scheduled) in which Miller inquired about and requested payment of her unpaid wages.

53.     Miller received partial payment for the pay period ending on May 13, 2013.

54.     Miller worked more than forty (40) hours and (48) hours in certain workweeks during her employment with PDI.

55.     On or about May 7, 2012, Algoo verbally agreed to pay Miller $25.00 per hour plus $75.00 per ultrasound job performed outside the hours of 8:00 am to 4:30 pm.

56.     On or about August 8, 2012, Algoo and Miller agreed to return to the previous arrangement of pay, so that Miller would receive $75.00 per ultrasound exam performed.  At this time, Algoo informed Miller that she would not be compensated for "on-call" time.

57.     In August 2012, Algoo verbally told Miller that Algoo was letting PDI "go under" to attempt to avoid certain problems with the Internal Revenue Service.

58.     Algoo then formed IMI, which performed identical services to PDI using the same facilities. When Miller worked for IMI, she performed the same work at the same locations

7

as when she worked for PDI. IMI took over substantially all of PDI's previous contracts and clients. IMI used all the same equipment that PDI was using.

59.     Miller was retained as an ultrasound technician for IMI.

60.     Algoo promised Miller that IMI would pay Miller all of her unpaid wages earned at PDI, though Algoo stated it would take a long time.

61.     Algoo told Miller that unpaid wages to PDI employees who stayed on with IMI would be the first debts to be repaid. Money owed to current vendors would be second, followed by money owed to past vendors, and finally unpaid wages of former PDI employees.

62.     Miller received one partial payment from IMI dated September 1, 2012.

63.     IMI stopped paying wages to Miller altogether on or about September 1, 2012.

64.     Meanwhile, despite PDI and IMI's failure to pay, and relying on the promises of Algoo to pay when IRS troubles were dealt with, Miller continued to work for IMI until October 28, 2012.

65.     Miller worked during holidays in certain workweeks in this time period.

66.     As a result of IMI's failure to pay Miller, Miller tendered her resignation on October 23, 2012. A true and correct copy of the resignation e-mail is attached hereto as Exhibit D.

67.     Miller made a written demand on PDI and IMI for the payment of the wages owed to her in writing on November 5, 2012. A true and correct copy of the demand letter is attached hereto as Exhibit E.

68.     Despite Miller's repeated requests, PDI and IMI have failed to pay her a total of $25,576.15 in wages, including unpaid overtime, $4,189.5 in unpaid mileage reimbursements, and $455.37 in other expenses for the time period of February 27, 2012 to October 28, 2012. A

8

spreadsheet outlining Miller's hours and wages from February 27, 2012 to October 28, 2012 is attached hereto as Exhibit F.

## C.    Unpaid Wages Owed to Griffin

69.     Griffin began working at PDI on or about April 16, 2012 as an ultrasound technician.  As part of her duties, Griffin traveled to patients as directed by PDI and performed ultrasound tests on patients in hospitals, nursing homes and other care facilities.

70.     PDI agreed to pay Griffin $75.00 per ultrasound test.

71.     PDI agreed to reimburse Griffin for her mileage at $0.51 per mile.

72.     Griffin was scheduled to be on call certain days for a 24-hours period.

73.     From the beginning of Griffin's employment, PDI was late and unreliable in paying Griffin.

74.     Griffin received one paycheck dated May 11, 2012 in the amount of $409.66.  The check only covered a two-week pay period (April 17 to April 27) and did not cover all the wages owed to Griffin by PDI.

75.     On or about July 14, 2012, PDI paid Griffin $150.00 in cash.

76.     Griffin received a paycheck dated August 3, 2012 in the amount of $433.19.  This check issued by PDI to Griffin bounced, which forced Griffin to incur a penalty from her bank.

77.     Griffin made repeated demands to PDI for payment of her wages as she continued to work.  Despite these requests, PDI failed to pay Griffin her wages.

78.     Algoo told Griffin that payment was late due to certain problems with IRS.

79.     Despite PDI's failure to pay, and relying on the promises of Algoo to eventually pay Griffin, Griffin continued to work for PDI until July 18, 2012.

80.     Griffin was forced to resign from her position at PDI because of PDI's failure to pay her unpaid wages.

9

81.     Griffin made a written demand on May 7, 2013 for payment of her unpaid wages. A true and correct copy of this demand letter is attached hereto as Exhibit G.

82.     Despite Griffin's repeated requests, Griffin remains unpaid for a total of $1,675.16, consisting of $1,352.84 in wages and $322.32 in unpaid mileage reimbursements for the time period of April 16, 2012 to July 18, 2012. A spreadsheet outlining Griffin's wages from April 16, 2012 to July 18, 2012 is attached hereto as Exhibit H.

### D.     Unpaid Wages Owed to Stone

83.     Stone began working at PDI on or about May 15, 2012 as an ultrasound technician. As part of her duties, Stone traveled to patients as directed by PDI and performed ultrasound tests on patients in hospitals, nursing homes and other care facilities. This was Stone's first job.

84.     PDI agreed to pay Stone $75.00 per ultrasound test.

85.     PDI agreed to reimburse Stone for her mileage at $0.50 per mile.

86.     Stone was scheduled to be on call for anywhere from 8 hours to 24-hours at a time.

87.     Stone also occasionally worked at PDI's work-flow office to take calls and schedule ultrasound and x-ray tests. PDI agreed to pay Stone $12.00 per hour for these services.

88.     From the beginning of Stone's employment, PDI was late and unreliable in paying Stone.

89.     Stone received one cash payment of approximately $200.00 from Algoo in June 2012.

90.     Stone received one paycheck from PDI dated August 3, 2012 in the amount of $301.50. The check only covered a two-week pay period and did not cover all the wages owed to Stone by PDI. Stone did not receive any other payments from PDI.

10

91.     Stone made repeated demands to PDI for payment of her wages as she continued to work.  Despite these requests, PDI failed to pay Stone her wages.

92.     Stone repeatedly asked Algoo for payment of her unpaid wages.  Stone attempted to call Algoo, e-mailed, and texted Algoo to request payment.

93.     Algoo was generally evasive and ignored these requests.

94.     When Algoo did respond, it was typically with words to the effect that Algoo wanted to pay Stone, but the finances of PDI were tight.  Algoo would often promise payment by certain dates, and then fail to pay Stone on those dates.

95.     Meanwhile, despite PDI's failure to pay, and relying on the promises of Algoo to eventually pay Stone, Stone continued to work for PDI until approximately August 31, 2012.

96.     On or about August 31, 2012, Stone informed Algoo by e-mail that she would not go on any more calls until she was paid.

97.     Stone was forced to resign from her position at PDI because of PDI's failure to pay her unpaid wages.

98.     Stone made a written demand on May 7, 2013 for payment of her unpaid wages.  A true and correct copy of this demand letter is attached hereto as Exhibit I.

99.     Stone remains unpaid for a total of $1,577.50 in wages and $354.50 in unpaid mileage reimbursements for the time period of May 15, 2012 to August 31, 2012.  A spreadsheet outlining Stone's wages from May 15, 2012 to August 31, 2012 is attached hereto as Exhibit J.

E.     **Unpaid Wages Owed to Schauls**

100.    Schauls began working for PDI as an echo technician on or around July 8, 2012.  As part of her duties, Schauls traveled to patients as directed by PDI and performed radiological tests on patients.

101.    PDI agreed to pay Schauls $125.00 per job.

11

102.    PDI agreed to reimburse Schauls for her mileage at $0.50 per mile.

103.    Schauls also worked in an administrative capacity for PDI.  PDI agreed to pay Schauls $25.00 per hour for administrative work.

104.    From the beginning of Schauls' employment, PDI was late and unreliable in paying her.

105.    Schauls made repeated demands to PDI for payment of her wages as she continued to work.  Despite these requests, PDI failed to pay Schauls her wages.

106.    In August 2012, Algoo formed IMI, which performed identical services to PDI using the same facilities.  When Schauls worked for IMI, she performed the same work at the same locations as when she worked for PDI.  IMI took over substantially all of PDI's previous contracts and clients.  IMI used all the same equipment that PDI was using.

107.    Schauls was retained as an echo technician for IMI and continued to perform administrative tasks for IMI.

108.    IMI was late and unreliable in paying Schauls and failed to pay Schauls all the wages owed to her.

109.    Meanwhile, despite PDI and IMI's failure to pay, and relying on the promises of Algoo to pay, Schauls continued to work for IMI until September 27, 2012.

110.    As a result of IMI's failure to pay Schauls, Schauls tendered her resignation effective on September 27, 2012.

111.    Schauls made a written demand on PDI and IMI for the payment of the wages owed to her on September 27, 2012.  A true and correct copy of the demand e-mail is attached hereto as Exhibit K.

112.    Schauls made another written demand on May 7, 2013 for payment of her unpaid wages.  A true and correct copy of this demand letter is attached hereto as Exhibit G.

113.    Despite Schauls' repeated requests, PDI and IMI have failed to pay her a total of $8,154.25.  This amount consists of $7,456.25 in unpaid wages, $1,125.00 in unpaid overtime, $273.00 in unpaid mileage reimbursements, and $300.00 in other expenses, minus a one-time $1,000 payment.  *See* Exhibit K.

F.    Fraudulent Transfer/Avoidance of Employee Creditors

114.    Upon information and belief, Algoo, Gaston, Burgmeier, and/or Chepuri intentionally dismantled PDI and IMI and fraudulently transferred their assets to themselves, MMI, or third parties, in part, to evade potential legal action from creditors, including Plaintiffs, with respect to the claims set forth in this Complaint.

115.    Upon information and belief, PDI had substantial debts.

116.    Upon information and belief, Algoo and Gaston decided to start IMI so that they would not have to deal with all of PDI's debt.

117.    Upon information and belief, Algoo and Gaston wanted a fresh start by starting IMI so that they could win back customers who did not want to work with PDI because it had so much debt.

118.    Algoo told at least one employee, Diane Anderson ("**Anderson**"), that Algoo would deal with all of the debt involving PDI.

119.    Just as with Miller, Algoo told Anderson that nothing about Anderson's employment was going to change when IMI took over and PDI changed its name.

120.    On or about August 20, 2012, Algoo started IMI.   A true and correct copy of the business filing with the Minnesota Secretary of State is attached hereto as Exhibit L.

121.    Prior to Labor Day weekend, around August 23, 2012, Algoo and Chepuri arranged a meeting at Abbott Northwestern Hospital in Minneapolis, outside in the courtyard, to discuss the future of PDI and IMI (the "**Courtyard Meeting**").  The Courtyard Meeting was

13

attended by Algoo, Chepuri, Gaston, Schauls, Miller, and Anderson.  During the Courtyard

Meeting, Chepuri told the employees that IMI should be profitable, and there should be no

financial problems based on the business plan.

122.    Following the Courtyard Meeting, several employees continued to perform the

same type of work that they had performed for PDI, including administrative work, in the same

office located at 1625 #A Hennepin Avenue, Minneapolis, Minnesota 55403.

123.    In a letter dated September 20, 2012, IMI informed various accounts payable that

"Integrity Medical Imaging (Integrity) has purchased Premier Diagnostic Imaging, Inc. (Premier)

effective immediately.  In doing so, Integrity now holds all interests formerly by Premier. Please

note the new Tax ID and business address below.  For the enclosed invoices and for all future

accounts payable, please address payment to Integrity and use the new ID."  A true and correct

copy of the letter is attached as <u>Exhibit M</u>.  Upon information and belief, IMI demanded payment

from its accounts for services actually rendered by PDI before IMI was formed.

124.    On or about September 20, 2012, Anderson went to the offices located at 1625 #A

Hennepin Avenue, Minneapolis, Minnesota 55403 to find out why she had not been paid.  At this

time:

> a.    Anderson saw a large business sign located near the entrance of the office
> that said "Premier Diagnostic Imaging".   This was the same sign that was
> being displayed when she was hired by PDI.
>
> b.    Everything in the office looked the same.  Anderson observed the same
> desks, computers, furniture, fax machine, and radiology equipment.  The
> computers, equipment, and furniture were arranged as they had been
> arranged before.  The color of the walls and decorations were the same.
> By all appearances, there was nothing different about the business.
>
> c.    Anderson did not see any signage for "Integrity Medical Imaging", "IMI",
> or any other signage or announcements indicating that it was a different
> company.

d.      Anderson asked Gaston why she had not been paid.  Gaston told Anderson that PDI had not sent out any bills for the last six (6) months and that Algoo was waiting until IMI was started, and until a new tax identification number and Medicare provider number was obtained, before sending out bills to clients for work already performed by employees of PDI.

e.      Gaston told Anderson that PDI had waited to bill clients because the Internal Revenue Service had frozen PDI's business bank accounts.

f.      Gaston told Anderson that from now on, when bills were sent, IMI would be asking the clients to pay IMI rather than PDI for work performed while the company was called PDI.  Gaston said that Algoo was worried that the clients might not write out checks to IMI because they did not have to.

125.    Sometime between September 20, 2012 and September 25, 2012, Anderson called the phone number previously used for PDI (952-955-8010).  Schauls answered the phone and said, "Integrity Medical Imaging."

126.    Between September 25, 2012 and September 27, 2012, Schauls exchanged e-mails with Algoo leading up to Schauls' resignation.  A true and correct copy of the e-mails are attached hereto as Exhibit N.  In the e-mails, Algoo told Schauls that:

a.      "You are not working for me, you are working for Dr. Chepuri."

b.      Chepuri gave Algoo money to get someone to perform an echo exam.

c.      "It is no longer my company... all shares were sold. All of mine to Dr. Chepuri."

d.      "In this economy the one thing there isn't a shortage of is employees."

127.    Around October 5, 2012, Anderson received a series of text messages from Schauls.  Schauls's text messages stated:

a.      PDI was officially operating as IMI as of September 24, 2012.

b.      IMI was using the same address (1625 #A Hennepin Avenue, Minneapolis, Minnesota 55403) as PDI.

c.      Employees had not been paid for the most recent payday, even though the company was now officially IMI.

15

    d.      Chepuri and another investor were supposedly the sole owners of IMI.

128.    Just like PDI, IMI provides portable radiological services.

129.    Upon information and belief, PDI and IMI hired employees without any intention of paying them.  Among other things:

    a.      Many of the employees working for PDI and IMI were young, new graduates, foreigners, and were desperate for a job and did not know PDI's reputation.

    b.      Algoo and Gaston would tell employees who complained about not getting paid that they had an "attitude."

    c.      PDI fired employees who complained about not getting paid.  For example, one employee refused to work unless she got paid first.  Shortly thereafter, the employee was fired.

130.    On or about November 15, 2012, Algoo started MMI.   A true and correct copy of the business filing with the Minnesota Secretary of State is attached hereto as <u>Exhibit O.</u>

131.    Just like PDI and IMI, MMI provides portable radiological services.

132.    The logo for MMI is exactly the same as the logo for IMI, except for the name of the companies.  True and correct copies of the logo for each company are attached hereto as <u>Exhibit P.</u>

133.    The text any layout on the website for MMI (www.mnmedimaging.com) is identical and nearly verbatim to the text on the website for PDI (www.pdimaging.com).  True and correct copies of a printout from each website are attached hereto as <u>Exhibit Q.</u>

134.    Upon information and belief, Chepuri has been instrumental in conducting the operations of PDI and IMI.

135.    Upon information and belief, Chepuri is an owner of IMI.

136.    Upon information and belief, Chepuri is on the board of IMI.

137.    Algoo and Chepuri have been involved in a romantic relationship.

16

138.   Over Labor Day weekend, Gaston and her family hosted a party.  At the party,

Algoo and Chepuri share public displays of affection including kissing on the lips and hugging

each other.  On various occasions, employees of PDI and IMI witnessed Chepuri making social

visits to Algoo at the offices of PDI and IMI.

## G.   Judge Peterson's Findings About the Defendants

139.   On May 31, 2012, a former employee of PDI, Shawn Knoth (**"Knoth"**) asserted a

separate lawsuit against various defendants including PDI, IMI and Algoo.  *See Knoth v. Premier

Diagnostic Imaging, Inc., et al,* Civ. No. 27-CV-12-13809, State of Minnesota, Fourth Judicial

District (Hennepin County, Oct. 11, 2012).

140.   All defendants failed to appear to defend the lawsuit and Knoth obtained a default

judgment against PDI, IMI, and Algoo.

141.   On January 25, 2013, the Honorable Judge Bruce A. Peterson signed Findings of

Fact, Conclusions of Law, and Order Granting Default Judgment (the **"Order"**), attached hereto

as Exhibit R.

142.   Among other things, the Order finds that:

> At a time when PDI owed [Knoth] for his unpaid wages and PDI was not
> paying its financial obligations when they were due, Defendants PDI, IMI,
> and Algoo (1) started a new company (IMI) as a medical imaging
> company; (2) utilized the same employees for the same work at the same
> locations as they previously did for PDI; (3) allowed IMI to take over
> PDI's previous contracts and clients; (4) allowed PDI to use the same
> equipment that PDI was using; (5) allowed PDI to use the same phone
> number that PDI was using; and (6) by all appearances continued, the
> business of PDI under a different name (IMI).

Exhibit R, para. 12.

143.   The Order also finds that (1) PDI breached its contractual obligations to Knoth;

(2) PDI violated Minn. Stat. § 181.14 by failing to pay Knoth his wages; (3) PDI and Algoo

violated the Fair Labor Standards Act, 29 U.S.C. §§ 206(a) and 207(a)(1), by failing to pay

17

Knoth the minimum wage rate and unpaid overtime wages; (4) PDI and Algoo violated the

Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.24 and 177.25, by failing to pay Knoth

the minimum wage rate and unpaid overtime wages; (5) Knoth is entitled to civil penalties under

Minn. Stat. § 177.27, subds. 7-8 in the amount of $1,000 for each week in which Knoth was not

paid his wages; (6) PDI does not deny liability for fraudulent transfer under Minn. Stat. § 513.44;

(7) PDI does not deny liability for fraudulent transfer under Minn. Stat. § 513.45; (8) IMI is

liable as a successor to the liabilities and obligations of PDI with respect to Knoth; (9) Algoo is

personally liable to Knoth for the damages that PDI owes to Knoth under the theory of piercing

the PDI corporate veil. *See* Exhibit R.

### Count I. <u>Breach of Contract for Wages</u>
### (Against PDI and IMI)

144.    Plaintiffs reallege and reincorporate all of the allegations contained in the

preceding paragraphs as though fully set forth herein.

145.    Plaintiffs Peterson, Miller, Griffin, Stone, and Schauls each entered into a

contractual agreement with PDI and IMI, as alleged above, supported by good and valuable

consideration, whereby PDI and IMI agreed to pay Plaintiffs certain compensation and expense

reimbursements while Plaintiffs were employed by PDI and IMI.

146.    Upon information and belief, PDI and IMI have breached their contractual

obligations by failing to pay Plaintiffs all monies due and owing pursuant to the parties'

agreement regarding compensation and expense reimbursements.

147.    As a result of the aforesaid conduct, Plaintiffs have suffered damages in an

amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial.

## Count II. Violation of Minn. Stat. § 181.14
### For Recovery of Wages Following Resignation
#### (Against PDI and IMI)

148.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

149.    Plaintiffs Peterson, Miller, Griffin, Stone, and Schauls are each an employee within the meaning of Minn. Stat. § 181.14.

150.    PDI is an employer under Minn. Stat. §§ 181.14 and 181.171.

151.    IMI is an employer under Minn. Stat. §§ 181.14 and 181.171.

152.    Minn. Stat. § 181.14, subd.1 (a), provides that:

> When any such employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject to a collective bargaining agreement with a different provision. If the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment.

153.    As of the date of each Plaintiff's resignation, PDI and IMI owed Plaintiffs wages actually earned and unpaid, pursuant to each of Plaintiff's agreements as alleged above.

154.    PDI and IMI failed to make full payment to each Plaintiff for the wages actually earned prior to the first regularly scheduled payday following each Plaintiff's date of resignation and for a period exceeding 20 days following each Plaintiff's final day of employment.

155.    Minn. Stat. § 181.14, subd. 2, provides that:

> Wages or commissions not paid within the required time period shall become immediately payable upon the demand of the employee.

19

156.     On October 1, 2012, Plaintiff Peterson made a written demand for the wages actually earned and unpaid.  PDI failed to pay the wages actually earned and unpaid within 24 hours of Plaintiff Peterson's demand.

157.     On November 5, 2012, Plaintiff Miller made a written demand for the wages actually earned and unpaid to PDI and IMI.  PDI and IMI failed to pay the wages actually earned and unpaid within 24 hours of Plaintiff Miller's demand.

158.     On May 7, 2013, Plaintiff Griffin made a written demand for the wages actually earned and unpaid.  PDI failed to pay the wages actually earned and unpaid within 24 hours of Plaintiff Griffin's demand.

159.     On May 7, 2013, Plaintiff Stone made a written demand for the wages actually earned and unpaid.  PDI failed to pay the wages actually earned and unpaid within 24 hours of Plaintiff Stone's demand.

160.     On September 27, 2012, and May 7, 2013 Plaintiff Schauls made a written demand for the wages actually earned and unpaid to PDI and IMI.  PDI and IMI failed to pay the wages actually earned and unpaid within 24 hours of Plaintiff Schauls' demand.

161.     Minn. Stat. § 181.14, subd. 2, provides that:

> If the employee's earned wages or commissions are not paid within 24 hours after the demand, the employer shall be liable to the employee for an additional sum equal to the amount of the employee's average daily earnings provided in the contract of employment, for every day, not exceeding 15 days in all, until such payment or other settlement satisfactory to the employee is made.

162.     PDI and IMI failed to make full payment to Plaintiffs Peterson, Miller, Griffin, Stone, and Schauls for the wages actually earned by each of them as of the dates of their resignation, for a period exceeding 15 days following the 24-hour period of Plaintiffs' demands.

163.    Under Minn. Stat. § 181.14 and Minn. Stat. § 181.171, subds. 1 and 3, Plaintiffs are entitled to recover from PDI and IMI damages including, but not limited to, the statutory penalty of the average daily earnings for 15 days as described in Minn. Stat. § 181.14, subd. 2, compensatory damages and other appropriate relief including but not limited to injunctive relief, reasonable costs, disbursements, witness fees, and attorney's fees.

164.    As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial.

### Count III.  Violation of Minn. Stat. § 181.101
### Recovery of Wages for Failure to Pay Every 31 Days
### (Against PDI and IMI)

165.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

166.    Plaintiffs Peterson, Miller, Griffin, Stone, and Schauls are each an employee within the meaning of Minn. Stat. § 181.101.

167.    PDI is an employer under Minn. Stat. §§ 181.101 and 181.171, subds. 1 and 3.

168.    IMI is an employer under Minn. Stat. §§ 181.101 and 181.171, subds. 1 and 3.

169.    Minn. Stat. § 181.101 provides that:

> Every employer must pay all wages earned by an employee at least once every 31 days on a regular payday designated in advance by the employer regardless of whether the employee requests payment at longer intervals. Unless paid earlier, the wages earned during the first half of the first 31-day pay period become due on the first regular payday following the first day of work.

170.    PDI and IMI failed to make full payment to Plaintiffs for wages actually earned at least once every 31 days.

171.    Under Minn. Stat. § 181.101 and Minn. Stat. § 181.171, subds. 1 and 3, Plaintiffs are entitled to recover from PDI and IMI damages including but not limited to compensatory damages, reasonable costs, disbursements, witness fees, and attorney's fees.

172.    As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000.00).

### Count IV.  Violation of Minimum Wage Requirements of the Federal Fair Labor Standards Act  (29 U.S.C. § 206(b)) (Against PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri)

173.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

174.    Plaintiffs Peterson, Miller, Griffin, Stone, and Schauls are each an employee within the meaning of 29 U.S.C. § 203(e)(1).

175.    PDI is an employer within the meaning of 29 U.S.C. § 203(d).

176.    IMI is an employer within the meaning of 29 U.S.C. § 203(d).

177.    Algoo is an employer within the meaning of 29 U.S.C. § 203(d).

178.    Gaston is an employer within the meaning of 29 U.S.C. § 203(d).

179.    Burgmeier is an employer within the meaning of 29 U.S.C. § 203(d).

180.    Chepuri is an employer within the meaning of 29 U.S.C. § 203(d).

181.    Algoo, as an officer of PDI and IMI, Gaston, as an officer of PDI and IMI, Burgmeier, as an officer of PDI, and Chepuri, as an owner of IMI, are personally liable to Plaintiffs for their claims under the FLSA.

182.    Plaintiffs are not exempt from the minimum wage requirements of the Fair Labor Standards Act ("FLSA").

183.    Plaintiffs were not paid on a "salary basis" within the meaning of the FLSA.

22

184.    Plaintiffs do not meet the duties test for any of the exemptions under the FLSA. *See* Exhibit S (copy of the U.S. DOL guidance regarding ultrasound technicians).

185.    Pursuant to 29 U.S.C § 206(b), an employer, "shall pay to each of his employees…who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage rate . . . ."

186.    During each of Plaintiffs' employment by PDI and IMI, Plaintiffs were engaged in commerce and handled goods or materials that have been moved in interstate commerce.

187.    During each of Plaintiffs' employment, PDI and IMI, PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri failed to pay Plaintiffs the minimum wage rate for hours worked during certain workweeks.

188.    Defendants PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri have violated the FLSA and directly and proximately caused Plaintiffs to suffer damages including unpaid minimum wages to which Plaintiffs are entitled.

189.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs are owed minimum wages, an additional equal amount as liquidated damages, plus reasonable costs, disbursements, witness fees, and attorney's fees incurred in this action.

### Count V.  Violation of the Overtime Requirements of the Federal Fair Labor Standards Act (29 U.S.C. § 207(a)(1)) (Against PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri)

190.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

191.    Plaintiffs are not exempt from the overtime pay requirements of the FLSA.

192.    Plaintiffs were not paid on a "salary basis" within the meaning of the FLSA.

23

193.    Plaintiffs do not meet the duties test for any of the exemptions under the FLSA. *See* Exhibit S (copy of the U.S. DOL guidance regarding ultrasound technicians).

194.    Pursuant to 29 U.S.C. § 207(a)(1), no employer "shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and on-half times the regular rate at which he is employed."

195.    During Plaintiff Peterson's, Plaintiff Miller's, and Plaintiff Schauls' employment by PDI and IMI, Peterson, Miller, and Schauls worked in excess of forty hours during certain workweeks.

196.    Defendants PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri failed to compensate Plaintiffs Peterson, Miller, and Schauls for hours worked in excess of forty hours per week at a rate of at least one and one-half times their regular rate of pay, as required by 29 U.S.C. § 207(a)(1).

197.    Defendants PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri have violated the FLSA and directly and proximately caused Plaintiffs to suffer damages including unpaid overtime pay to which Plaintiffs are entitled.

198.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs Peterson, Miller, and Schauls are owed unpaid wages, overtime pay, an additional equal amount as liquidated damages, plus reasonable costs, disbursements, witness fees, and attorney's fees incurred in this action.

### Count VI. Violation of the Minimum Wage Requirements of the Minnesota Fair Labor Standards Act (Minn. Stat. § 177.24, subd. 1)
(Against PDI , IMI, Algoo, Gaston, Burgmeier, and Chepuri)

199.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

200.   Plaintiffs Peterson, Miller, Griffin, Stone, and Schauls are each an employee within the meaning of Minn. Stat. § 177.23, subd. 7.

201.   PDI is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

202.   Upon information and belief, PDI is a "large employer" within the meaning of Minn. Stat. § 177.24, subd. 1.

203.   IMI is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

204.   Upon information and belief, IMI is a "large employer" within the meaning of Minn. Stat. § 177.24, subd. 1.

205.   Algoo is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

206.   Upon information and belief, Algoo is a "large employer" within the meaning of Minn. Stat. § 177.24, subd. 1.

207.   Gaston is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

208.   Upon information and belief, Gaston is a "large employer" within the meaning of Minn. Stat. § 177.24, subd. 1.

209.   Burgmeier is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

210.   Upon information and belief, Burgmeier is a "large employer" within the meaning of Minn. Stat. § 177.24, subd. 1.

211.   Chepuri is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

212.   Upon information and belief, Chepuri is a "large employer" within the meaning of Minn. Stat. § 177.24, subd. 1.

213.   Algoo, as an officer of PDI and IMI, Gaston, as an officer of PDI and IMI, Burgmeier, as an officer of PDI, and Chepuri, as an owner of IMI, are personally liable to Plaintiffs for their claims under the Minnesota Fair Labor Standards Act ("MFLSA").

214.   Plaintiffs are not exempt from the minimum wage requirements of the MFLSA.

25

215.    Pursuant to Minn. Stat. § 177.24, subd. 1, "every large employer must pay each employee wages at a rate of at least $6.15 an hour . . . ."

216.    During Plaintiffs' employment, PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri failed to pay Plaintiffs the minimum wage rate for hours worked during certain workweeks.

217.    Defendants PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri have violated the MFLSA and directly and proximately caused Plaintiffs to suffer damages including unpaid minimum wages to which Plaintiffs are entitled.

218.    Pursuant to Minn. Stat. § 177.27, subds. 8 and 10, Plaintiffs are owed unpaid wages, an additional equal amount as liquidated damages, plus reasonable costs, disbursements, witness fees, and attorney's fees incurred in this action.

**Count VII.  Violation of the Overtime Pay Requirements of the Minnesota Fair Labor Standards Act (Minn. Stat. § 177.25) (Against PDI , IMI, Algoo, Gaston, Burgmeier, and Chepuri)**

219.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

220.    Plaintiffs are not exempt from the overtime requirements of the MFLSA.

221.    Pursuant to Minn. Stat. § 177.25, no employer "may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed."

222.    During Plaintiff Peterson's, Plaintiff Miller's, and Plaintiff Schauls' employment by PDI and IMI, Plaintiffs Peterson, Miller, and Schauls routinely worked in excess of forty-eight hours during certain workweeks.

26

223.   ·Defendants PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri failed to compensate Plaintiffs Peterson, Miller, and Schauls for hours worked in excess of forty-eight hours per week at a rate of at least one and one-half times their regular rate of pay, as required by as required by Minn. Stat. § 177.25.

224.   Defendants PDI, IMI, Algoo, Gaston, Burgmeier, and Chepuri have violated the MFLSA and directly and proximately caused Plaintiffs to suffer damages including unpaid overtime pay to which Plaintiffs are entitled.

225.   Pursuant to Minn. Stat. § 177.27, subds. 8 and 10, Plaintiffs are owed unpaid overtime pay, an additional equal amount as liquidated damages, plus reasonable costs, disbursements, witness fees, and attorney's fees incurred in this action.

### Count VIII.  Unjust Enrichment
### (Against Defendants)

226.   Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

227.   By and through Defendants' actions, Defendants knowingly and wrongfully received and retained benefits at Plaintiffs' expenses.

228.   Upon information and belief, Defendants' actions in permitting and suffering Plaintiffs to work without payment of wages and expenses were wrongful and improper.

229.   It would be unjust for Defendants to retain these benefits without compensating Plaintiffs in an amount equal to the unpaid wages and expenses incurred by Plaintiffs.

230.   As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial.

**Count IX.  Minn. Stat. § 513.44**
**Relief From Fraudulent Transfer**
**(Against Defendants PDI, IMI, and MMI)**

231.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

232.    Plaintiffs are each a "creditor" of PDI and IMI, as alleged above, within the meaning of Minn. Stat. § 513.44.

233.    Plaintiffs are each a creditor with a "claim" against PDI and IMI, as alleged above, within the meaning of Minn. Stat. § 513.44.

234.    PDI and IMI are each a "debtor" within the meaning of Minn. Stat § 513.44.

235.    Upon information and belief, PDI and IMI made a "transfer" within the meaning of Minn. Stat. § 513.46.

236.    Minn. Stat. § 513.44 provides that:

    (a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

        (1)    with actual intent to hinder, delay, or defraud any creditor of the debtor; or

        (2)    without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

            (i)    was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

            (ii)    intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

28

237.    Upon information and belief, Defendants PDI and IMI made a transfer of all or substantially all of their assets to Defendants IMI, MMI, Algoo, Gaston, Burgmeier, and/or Chepuri with the actual intent to hinder, delay, or defraud creditors including Plaintiffs.

238.    Upon information and belief, Defendants PDI and IMI made a transfer of all or substantially all of their assets to Defendants IMI, MMI, Algoo, Gaston, Burgmeier, and Chepuri without receiving a reasonably equivalent value in exchange for the transfer.

239.    Upon information and belief, Defendants PDI and IMI engaged or were about to engage in a transaction for which its remaining assets were unreasonably small in relation to the transaction including, but not limited to, hiring Plaintiffs, continuing to accept services from Plaintiffs, and inducing Plaintiffs to continue their employment.

240.    Upon information and belief, Defendants PDI and IMI intended to incur or reasonably should have believed that they would incur debts beyond their ability to pay as they became due by taking actions including, but not limited to, hiring Plaintiffs, continuing to accept services from Plaintiffs, and inducing Plaintiffs to continue their employment.

241.    Minn. Stat. § 513.47 provides that:

> In an action for relief against a transfer or obligation under sections 513.41 to 513.51, a creditor, subject to the limitations in section 513.48, may obtain:
>
> (1)    avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2)    an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 570;
>
> (3)    subject to applicable principles of equity and in accordance with applicable Rules of Civil Procedure:
>
> > (i)    an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

29

   (ii)  appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

   (iii)  any other relief the circumstances may require.

242. Under Minn. Stat. §§ 513.44 and 513.47, Plaintiffs are entitled to avoid the transfer or obligation necessary to satisfy their claims against Defendants PDI and IMI, an attachment or other provisional remedy against the assets transferred, an injunction against further disposition by Defendants PDI and IMI, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

243. As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial.

244. As a result of the aforesaid conduct, Defendants PDI, IMI, and MMI are jointly and severally liable for Plaintiffs' damages as set forth in this Complaint and any judgment entered against Defendants thereon.

245. The aforesaid conduct, including the continued dissipation of Defendants' assets, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.  As a result, Plaintiffs are entitled to injunctive relief, including but not limited to an order of pre-judgment attachment against Defendants.

### Count X.  Minn. Stat. § 513.45 Relief From Fraudulent Transfer
### (Against Defendants PDI, IMI, and MMI)

246. Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

247. Plaintiffs are each a "creditor" of Defendants PDI and IMI within the meaning of Minn. Stat. § 513.45.

248. Plaintiffs are each a creditor with a "claim" against Defendants PDI and IMI

within the meaning of Minn. Stat. § 513.45.

249.    Defendants PDI and IMI are each a "debtor" within the meaning of Minn. Stat. § 513.45.

250.    Upon information and belief, Defendants PDI and IMI made a "transfer" within the meaning of Minn. Stat. § 513.46.

251.    Minn. Stat. § 513.45 provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

252.    Upon information and belief, Defendants PDI and IMI transferred all or substantially all of their assets to Defendants IMI, MMI, Algoo, Gaston, Burgmeier, and/or Chepuri without receiving a reasonably equivalent value in exchange for the transfer.

253.    Upon information and belief, Defendants PDI and IMI were insolvent at the time of the transfer or became insolvent as a result of the transfer.

254.    Under Minn. Stat. §§ 513.45 and 513.47, Plaintiffs are entitled to avoid the transfer or obligation necessary to satisfy their claims against Defendants PDI and IMI, an attachment or other provisional remedy against the asset transferred, an injunction against further disposition by Defendants PDI and IMI, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

255.    As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial.

256.    As a result of the aforesaid conduct, Defendants PDI, IMI, and MMI are jointly and severally liable for Plaintiffs' damages as set forth in this Complaint and any judgment entered against Defendants thereon.

257.    The aforesaid conduct, including the continued dissipation of Defendants' assets, for which there is no complete adequate remedy at law, is irreparable, continuing in nature, and will continue unless properly enjoined.  As a result, Plaintiffs are entitled to injunctive relief, including but not limited to an order of pre-judgment attachment against Defendants.

### Count XI.  Successor Liability
### (Against Defendants IMI and MMI)

258.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

259.    Upon information and belief, Defendant PDI, with the intent to hinder, delay, and/or defraud creditors and potential creditors, including Plaintiffs, transferred substantially all of its assets, including goodwill, customer lists, and other intangible assets, to Defendants IMI and/or MMI without consideration.

260.    Upon information and belief, PDI was insolvent at the time or became insolvent as a result of the transfer to IMI.

261.    Upon information and belief, Defendant IMI explicitly assumed the liability of Defendant PDI to pay some of the wages owed to Plaintiffs as alleged herein.

262.    Upon information and belief, Defendant IMI, with the intent to hinder, delay, and/or defraud creditors and potential creditors, including Plaintiffs, transferred substantially all of its assets, including goodwill, customer lists, and other intangible assets, to Defendants MMI without consideration.

263.    Upon information and belief, IMI was insolvent at the time or became insolvent

32

as a result of the transfer to MMI.

264.    Defendant IMI should be held liable as the successor to the liabilities and obligations of Defendant PDI with respect to Plaintiffs.

265.    Defendant MMI should be held liable as the successor to the liabilities and obligations of Defendants PDI and IMI with respect to Plaintiffs.

266.    As a result of the aforesaid conduct, Plaintiffs have suffered damages in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs, disbursements, witness fees, and attorney's fees to be proven with specificity at trial.

### Count XII. Piercing the PDI Corporate Veil
### (Against Algoo, Gaston, Burgmeier, and Chepuri)

267.    Plaintiffs reallege and reincorporate all of the allegations contained in the preceding paragraphs as though fully set forth herein.

268.    Upon information and belief, Defendants Algoo, Gaston, Burgmeier, and Chepuri, operated Defendants PDI and IMI without sufficient capitalization for purposes of corporate undertaking.

269.    Upon information and belief, Defendants Algoo, Gaston, Burgmeier, and Chepuri operated Defendants PDI and IMI while failing to observe corporate formalities.

270.    Upon information and belief, Defendants Algoo, Gaston, Burgmeier, and Chepuri knew or should have known Defendants PDI and IMI were each insolvent at the time Plaintiffs were made offers of employment.

271.    Upon information and belief, Defendants Algoo, Gaston, Burgmeier, and Chepuri knew or should have known Defendants PDI and IMI remained insolvent during the course of Plaintiffs' employment with Defendants PDI and IMI.

272.    Upon information and belief, Defendants Algoo, Gaston, Burgmeier, and Chepuri,

as shareholders, members, officers, managers, directors and/or governors assisted in fraudulently

transferring assets of PDI and IMI to other persons and entities.

273.   Upon information and belief, Defendants PDI and IMI had no properly

functioning officers and directors.

274.   Upon information and belief, Defendants PDI and IMI lacked corporate records.

275.   Upon information and belief, PDI and IMI were operated merely as a façade for

individual dealings on behalf of Defendants IMI, MMI, Algoo, Gaston, Burgmeier, and Chepuri.

276.   If Defendants Algoo, Gaston, Burgmeier, and Chepuri are allowed to rely upon

the limitations of liability afforded under Minnesota state law with respect to corporations and

limited liability companies, injustice or fundamental unfairness to Plaintiffs will occur.

277.   As a result of the aforesaid conduct, Defendants Algoo, Gaston, Burgmeier, and

Chepuri are jointly and severally liable for Plaintiffs' damages as set forth in this Complaint and

any judgment entered against Defendants PDI and IMI thereon.

278.   As a result of the aforesaid conduct, Plaintiffs have suffered damages in an

amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial.

WHEREFORE, Plaintiffs respectfully request that the Court:

A.   Grant Plaintiffs a trial by jury with respect to all claims triable by jury as a matter of right and, pursuant to Minn. R. Civ. P. 39.02, try all remaining issues with an advisory jury;

B.   Enter judgment declaring that Defendants PDI, IMI, MMI, Algoo, Gaston, Burgmeier, and Chepuri are liable to Plaintiffs for wages and expenses owing and unpaid, statutory penalties and liquidated damages provided by federal and state law as alleged in this Complaint, along with accrued interest, and all other damages suffered by Plaintiffs;

C.   Enter judgment in favor of Plaintiffs and against Defendants PDI, IMI, MMI, Algoo, Gaston, Burgmeier, and Chepuri, jointly and severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) to be proven with specificity at trial;

D.     Award Plaintiffs their costs and disbursements herein, including reasonable attorney's fees, court costs, witness fees, and expenses;

E.     Award Plaintiffs double their costs pursuant to Minn. Stat. § 549.03;

F.     Award Plaintiffs civil penalties under the MFLSA (Minn. Stat. § 177.27, subds. 7-8), in the amount of $1,000 for each violation for each employee;

G.     Enjoin Defendants PDI, IMI, MMI, Algoo, Gaston Burgmeier, and Chepuri to avoid the fraudulent transfer of assets necessary to satisfy Plaintiffs' claims against Defendants and attach Defendants' assets until the action is resolved and the claims are satisfied; and

H.     Award such other and further relief as the Court deems just and equitable.

Dated: May 8, 2013.       **TREPANIER & MACGILLIS P.A.**

By: _Kelly M. Fiege_

Craig W. Trepanier, Atty. Reg. No. 250776
Kelly M. Fiege, Atty. Reg. No. 0392178
8000 Flour Exchange Building
310 Fourth Avenue South
Minneapolis, MN 55415
Phone: 612-455-0500
Fax: 612-455-0501
www.trepanierlaw.com

**ATTORNEYS FOR PLAINTIFFS
JOSHUA PETERSON, JENNIFER MILLER,
ALICIA GRIFFIN, KATHARINE STONE,
AND JENNIFER SCHAULS**

## ACKNOWLEDGEMENT

    The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.211 sanctions may be awarded to the party or parties against whom the allegations in this pleading are asserted.

Dated: May 8, 2013       By: _Kelly M. Fiege_

Kelly M. Fiege



January 6, 2012

Dear Josh:

I want to personally thank you for enduring the financial hardship with Premier Diagnostic Imaging, Inc. over the past few months. I am truly blessed to have such loyal employees and I want you to know that I genuinely appreciate your efforts and understanding.

I really appreciate your willingness to help out and adjust wherever needed. It's that kind of flexibility and dedication that will help this company grow to its full potential.

I had to secure another loan for cash infusion into the company and be able to take care of our most precious asset – our employees. We all suffered hardship but will soon be rewarded equally. Premier is growing and will soon be in a much better position.

I know it has not always been an easy path, yet I am happy to say there truly is light at the end of the tunnel. Attached are your past pay checks and documentation. Please don't cash them until next week, when you have been notified to do so.

I also wanted to invite you to Ciao Bella in Bloomington on Thursday, January 12, 2012 from 7-9pm for an employee appreciation and business meeting. This meeting is mandatory however; we will treat you to a complimentary drink and appetizers.

**We will call you with a confirmation on this meeting next Wednesday by noon.**

Once again, thank you!

Sincerely,

Kim Algoo
President & Chief Executive Officer
Premier Diagnostic Imaging, Inc.

PREMIER DIAGNOSTIC IMAGING, INC.
10800 LYNDALE AVE. S. #150 • BLOOMINGTON, MN 55420
P: 952-955-8010 • F: 952-345-0295
www.pdimagingmn.com



EXHIBIT
A

To:       Premier Diagnostic Imaging, Inc.
          Attn: Kim Algoo, President and CEO
          10800 Lyndale Avenue South, Suite 150
          Bloomington, MN 55420

From:     Joshua Peterson
          67 East Golden Lake Road
          Circle Pines, MN 55014

Re:       *Demand for Wages*

Date:     October 1, 2012

---

This will serve as my formal demand upon Premier Diagnostic Imaging, Inc. (the "Company") for all earned but unpaid wages, bonuses, commissions, and other compensation due to me from the Company.

This includes all earned but unpaid salary, wages, overtime, bonuses, incentives, commissions, vacation pay, personal time off ("PTO"), personal leave, paid holidays, sick pay, employer-sponsored health insurance or other premiums, stock-based compensation or stock options, severance payments under any plan, agreement, or practice, expense reimbursements, and all other forms of compensation, remuneration, and benefits.

Under Minn. Stat. § 181.13, when an employer discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after demand, the discharged employee may charge and collect the amount of the employee's average daily earnings at the rate agreed upon in the contract of employment, for each day up to 15 days, that the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made.

Under Minn. Stat. § 181.14, when any employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject to a collective bargaining agreement with a different provision. If the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment.

Failure to pay these amounts may result in the Company incurring additional damages, penalties, interest, and liability to pay my attorney's fees and costs under applicable law.

A copy of this authorization shall be valid and may be relied on as if it were the signed original.

Please mail all payments to me at the above address.

Joshua Peterson (Signature)                    9-29-12
                                               (Date)


EXHIBIT
B

Spreadsheet of Unpaid Wages to Joshua Peterson

| Date (Sunday through Saturday) | No. of Reg Hours | No. of OT Hours | No. of Calls | Calls | No Call Pay ("On Call" Fees) | Call Pay ("Per Facility" Fees) | Hourly Rate of Pay | Overtime Rate | Amount of Regular Pay | Amount of OT Pay | Total Wages for the Week |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/9/11 - 5/14/11 | 40 | 0 | 0 | 0 | | | $16.50 | $24.75 | $660.00 | $0.00 | $660.00 |
| 5/15/11 - 5/21/11 | 30.5 | 0 | 3 | 1 | | | $16.50 | $24.75 | $503.25 | $0.00 | $503.25 |
| 5/22/11 - 5/28/11 | 28 | 0 | 2 | 3 | $100.00 | $125.00 | $16.50 | $36.80 | $687.00 | $0.00 | $912.00 |
| 5/29/11 - 6/4/11 | 28 | 0 | 5 | 1 | | | $16.50 | $24.75 | $462.00 | $0.00 | $462.00 |
| 6/5/11 - 6/11/11 | 29.5 | 0 | 2 | 3 | $100.00 | $175.00 | $16.50 | $38.73 | $761.75 | $0.00 | $1,036.75 |
| 6/12/11 - 6/18/11 | 31 | 0 | 2 | 4 | | | $16.50 | $24.75 | $511.50 | $0.00 | $511.50 |
| 6/19/11 - 6/25/11 | 29 | 0 | 3 | 3 | $175.00 | $125.00 | $16.50 | $40.27 | $778.50 | $0.00 | $1,078.50 |
| 6/26/11 - 7/2/11 | 30 | 0 | 0 | 6 | | | $16.50 | $24.75 | $495.00 | $0.00 | $495.00 |
| 7/3/11 - 7/9/11 | 24 | 0 | 2 | 4 | $250.00 | $50.00 | $18.50 | $43.50 | $696.00 | $0.00 | $996.00 |
| 7/10/11 - 7/16/11 | 40 | 2.5 | 6 | 3 | | | $16.50 | $24.75 | $660.00 | $61.88 | $721.88 |
| 7/17/11 - 7/23/11 | 34 | 0 | 3 | 5 | $200.00 | $275.00 | $16.50 | $45.71 | $1,036.00 | $0.00 | $1,511.00 |
| 7/24/11 - 7/30/11 | 26 | 0 | 1 | 3 | | | $16.50 | $24.75 | $429.00 | $0.00 | $429.00 |
| 7/31/11 - 8/6/11 | 29 | 0 | 4 | 2 | $125.00 | $125.00 | $16.50 | $37.68 | $728.50 | $0.00 | $978.50 |
| 8/7/11 - 8/13/11 | 33 | 0 | 5 | 1 | | | $16.50 | $24.75 | $544.50 | $0.00 | $544.50 |
| 8/14/11 - 8/20/11 | 40 | 8.5 | 8 | 3 | $100.00 | $325.00 | $16.50 | $37.89 | $1,085.00 | $322.10 | $1,832.10 |
| 8/21/11 - 8/27/11 | 40 | 7.5 | 8 | 2 | | | $18.00 | $27.00 | $720.00 | $202.50 | $922.50 |
| 8/28/11 - 9/3/11 | 40 | 10 | 10 | 0 | $50.00 | $450.00 | $18.00 | $42.00 | $1,220.00 | $420.00 | $2,140.00 |
| 9/4/11 - 9/10/11 | 40 | 1 | 8 | 4 | | | $18.00 | $27.00 | $720.00 | $27.00 | $747.00 |
| 9/11/11 - 9/17/11 | 40 | 13 | 10 | 1 | $125.00 | $450.00 | $18.00 | $43.27 | $1,295.00 | $562.56 | $2,432.56 |
| 9/18/11 - 9/24/11 | 25 | 0 | 3 | 1 | | | $18.00 | $27.00 | $450.00 | $0.00 | $450.00 |
| 9/25/11 - 10/1/11 | 40 | 14.5 | 16 | 0 | $25.00 | $475.00 | $18.00 | $40.76 | $1,220.00 | $591.04 | $2,311.04 |
| 10/2/11 - 10/8/11 | 40 | 4 | 5 | 3 | | | $18.00 | $27.00 | $720.00 | $108.00 | $828.00 |
| 10/9/11 - 10/15/11 | 40 | 5.5 | 4 | 6 | $225.00 | $225.00 | $18.00 | $41.84 | $1,170.00 | $230.09 | $1,850.09 |
| 10/16/11 - 10/22/11 | 40 | 5 | 4 | 3 | | | $18.00 | $27.00 | $720.00 | $135.00 | $855.00 |
| 10/23/11 - 10/29/11 | 40 | 5.5 | 6 | 4 | $175.00 | $250.00 | $18.00 | $41.01 | $1,145.00 | $225.56 | $1,795.56 |
| 10/30/11 - 11/5/11 | 40 | 5.5 | 4 | 3 | | | $18.00 | $27.00 | $720.00 | $148.50 | $868.50 |
| 11/6/11 - 11/12/11 | 40 | 6 | 6 | 3 | $150.00 | $250.00 | $18.00 | $40.04 | $1,120.00 | $240.26 | $1,760.26 |
| 11/13/11 - 11/19/11 | 40 | 10 | 10 | 0 | | | $18.00 | $27.00 | $720.00 | $270.00 | $990.00 |
| 11/20/11 - 11/26/11 | 40 | 6 | 4 | 4 | $100.00 | $350.00 | $18.00 | $41.67 | $1,170.00 | $250.04 | $1,870.04 |
| 11/27/11 - 12/3/11 | 40 | 8.5 | 7 | 1 | | | $18.00 | $27.00 | $720.00 | $229.50 | $949.50 |
| 12/4/11 - 12/10/11 | 40 | 14.5 | 12 | 1 | $50.00 | $475.00 | $18.00 | $41.45 | $1,245.00 | $601.02 | $2,371.02 |
| 12/11/11 - 12/17/11 | 40 | 8 | 7 | 1 | | | $18.00 | $27.00 | $720.00 | $216.00 | $936.00 |



EXHIBIT
C

Spreadsheet of Unpaid Wages to Joshua Peterson

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/18/11 - 12/24/11 | 40 | 3 | 4 | 4 | $125.00 | $275.00 | $18.00 | $40.95 | $1,120.00 | $122.86 | $1,642.86 |
| 12/25/11 - 12/31/11 | 40 | 5.5 | 5 | 3 | | | $18.00 | $27.00 | $720.00 | $148.50 | $868.50 |
| 1/1/12 - 1/7/12 | 38.5 | 0 | 6 | 2 | $125.00 | $275.00 | $18.00 | $42.58 | $1,093.00 | $0.00 | $1,493.00 |
| 1/8/12 - 1/14/12 | 40 | 6 | 6 | 3 | | | $18.00 | $27.00 | $720.00 | $162.00 | $882.00 |
| 1/15/12 - 1/21/12 | 40 | 7.5 | 8 | 2 | $125.00 | $350.00 | $18.00 | $42.00 | $1,195.00 | $315.00 | $1,985.00 |
| 1/22/12 - 1/28/12 | 40 | 13.5 | 15 | 2 | | | $18.00 | $27.00 | $720.00 | $364.50 | $1,084.50 |
| 1/29/12 - 2/4/12 | 40 | 8 | 10 | 1 | $75.00 | $625.00 | $18.00 | $48.88 | $1,420.00 | $391.00 | $2,511.00 |
| 2/5/12 -2/11/12 | 37.5 | 0 | 7 | 3 | | | $18.00 | $27.00 | $675.00 | -$0.00 | $675.00 |
| 2/12/12 - 2/18/12 | 40 | 9.5 | 9 | 1 | $100.00 | $400.00 | $18.00 | $42.15 | $1,220.00 | $400.44 | $2,120.44 |
| 2/19/12 - 2/25/12 | 40 | 13.5 | 12 | 0 | | | $18.00 | $27.00 | $720.00 | $364.50 | $1,084.50 |
| 2/26/12 - 3/3/12 | 40 | 4.5 | 6 | 1 | $25.00 | $450.00 | $18.00 | $43.01 | $1,195.00 | $193.55 | $1,863.55 |
| 3/4/12 - 3/10/12 | 40 | 4.5 | 3 | 2 | | | $18.00 | $27.00 | $720.00 | $121.50 | $841.50 |
| 3/11/12 - 3/17/12 | 36 | 0 | 7 | 0 | $50.00 | $250.00 | $18.00 | $39.50 | $948.00 | $0.00 | $1,248.00 |
| 3/18/12 - 3/24/12 | 40 | 9 | 11 | 2 | | | $18.00 | $27.00 | $720.00 | $243.00 | $963.00 |
| 3/25/12 - 3/31/12 | 7.5 | 0 | 3 | 0 | $50.00 | $350.00 | $18.00 | $107.00 | $535.00 | $0.00 | $935.00 |
| 4/1/12 - 4/7/12 | 10.75 | 0 | 0 | 0 | | | $18.00 | $27.00 | $193.50 | $0.00 | $193.50 |
| | | | | | | | | | | | |
| SUBTOTAL | 1707.3 | 220 | 284 | 105 | $2,625.00 | $7,100.00 | | | $39,747.50 | $7,667.90 | $57,140.40 |
| AMOUNT ACTUALLY PAID | | | | | | | | | | | $14,694.75 |
| TOTAL OWED | | | | | | | | | | | $42,445.65 |

* ((Hourly rate x Total Hours + No Call Pay and Call Pay) / Total Hours) x 1.5 = OT Rate

Subject:RESIGNATION
  Date:Tue, 23 Oct 2012 22:16:20 -0500
  From:Jennifer Miller <Jenny-Miller@comcast.net>
    To:Kim Algoo <kim.algoo@gmail.com>, Amy Gaston <agaston17@yahoo.com>


To Integrity Medical Imaging:
Let this letter serve as my official resignation of employment from
Integrity Medical Imaging. This resignation is due to a breech of the
employment contract by the employer (i.e. failure to pay wages according
to schedule). This resignation is effective immediately; however, if my
shifts on the current schedule are unable to be covered, I will perform
ultrasound examinations during that time so as not to compromise patient
care.
Sincerely,
Jennifer Miller



From: "Jenny-Miller" <jenny-miller@comcast.net>
To: "kim algoo" <kim.algoo@gmail.com>
Sent: Monday, November 5, 2012 11:56:24 AM
Subject: demand letter

November 5, 2012

Jennifer Miller
5271 Buchanan Street
Fridley, MN 55421
612-298-1625
Jenny-Miller@comcast.net

Premier Diagnostic Imaging and Integrity Medical Imaging
2110 Nicollet Ave
Minneapolis, MN 55408

To: Kim, President/CEO and Premier Diagnostic Imaging / Integrity Medical Imaging owner(s):

Let this letter serve as my formal demand for payment.  Attached is an excel document
detailing outstanding wages.  Additional copies of timesheets/mileage logs are also available
upon your request.  By this record, $26,502.27 remains outstanding.

As you are probably familiar with, MN Statute 181.101 states that "Wages or commissions not
paid within the required time period shall become immediately payable upon the demand of the
employee."   Failure to pay these wages within 24 hours will result in additional fees/penalties
in accordance with MN law.

I look forward to hearing from you in the next 24 hours to resolve this matter.  I would prefer to
resolve this matter informally.

Sincerely,


Jennifer Miller

Attachment



Spreadsheet of Unpaid Wages to Jennifer Miller

| Date (Sunday through Saturday) | No. of Reg. Hours | No. of OT Hours | No. of Calls | Call Pay / Facility Fees | Hourly Rate of Pay | Rate of Overtime | Amount of Regular Pay | Amount of OT Pay | Total Amount of Wages for the Week |
|---|---|---|---|---|---|---|---|---|---|
| 2/26/12 - 3/3/12 | 12.5 | 0 | 4 | $75.00 | $0.00 | $0.00 | $300.00 | $0.00 | $300.00 |
| 3/4/12 - 3/10/12 | 9.5 | 0 | 3 | $75.00 | $0.00 | $0.00 | $225.00 | $0.00 | $225.00 |
| 3/11/12 - 3/17/12 | 14 | 0 | 3 | $75.00 | $0.00 | $0.00 | $225.00 | $0.00 | $225.00 |
| 3/18/12 - 3/24/12 | 19.5 | 0 | 10 | $75.00 | $0.00 | $0.00 | $750.00 | $0.00 | $750.00 |
| 3/25/12 - 3/31/12 | 0 | 0 | 10 | $75.00 | $0.00 | $0.00 | $750.00 | $0.00 | $750.00 |
| 4/1/12 - 4/7/12 | 15 | 0 | 10 | $75.00 | $0.00 | $0.00 | $750.00 | $0.00 | $750.00 |
| 4/8/12 - 4/14/12 | 15 | 0 | 13 | $75.00 | $0.00 | $0.00 | $975.00 | $0.00 | $975.00 |
| 4/15/12 - 4/21/12 | 30 | 0 | 13 | $75.00 | $0.00 | $0.00 | $975.00 | $0.00 | $975.00 |
| 4/22/12 - 4/28/12 | 22.5 | 0 | 10 | $75.00 | $0.00 | $0.00 | $750.00 | $0.00 | $750.00 |
| 4/29/12 - 5/5/12 | 12 | 0 | 11 | $75.00 | $0.00 | $0.00 | $825.00 | $0.00 | $825.00 |
| 5/6/12 - 5/12/12 | 16 | 0 | 12 | $75.00 | $0.00 | $0.00 | $900.00 | $0.00 | $900.00 |
| 5/13/12 - 5/19/12 | 20 | 0 | 12 | $75.00 | $0.00 | $0.00 | $900.00 | $0.00 | $900.00 |
| 5/20/12 - 5/26/12 | 36.5 | 0 | 0 | $0.00 | $25.00 | $0.00 | $912.50 | $0.00 | $912.50 |
| 5/27/12 - 6/2/12 | 40 | 3 | 0 | $0.00 | $25.00 | $40.31 | $1,150.00 | $120.94 | $1,270.94 |
| 6/3/12 - 6/9/12 | 40 | 1.5 | 0 | $0.00 | $25.00 | $40.31 | $1,000.00 | $60.47 | $1,060.47 |
| 6/10/12 - 6/16/12 | 40 | 4 | 0 | $0.00 | $25.00 | $40.31 | $1,075.00 | $161.25 | $1,236.25 |
| 6/17/12 - 6/23/12 | 40 | 0 | 3.5 | $0.00 | $25.00 | $0.00 | $1,262.50 | $0.00 | $1,262.50 |
| 6/24/12 - 6/30/12 | 40 | 0 | 5 | $0.00 | $25.00 | $0.00 | $1,000.00 | $0.00 | $1,000.00 |
| 7/1/12 - 7/7/12 | 40 | 5 | 5 | $0.00 | $25.00 | $40.31 | $1,000.00 | $201.56 | $1,201.56 |
| 7/8/12 - 7/14/12 | 40 | 11.5 | 5 | $0.00 | $25.00 | $40.31 | $1,375.00 | $463.59 | $1,838.59 |
| 7/15/12 - 7/21/12 | 40 | 6 | 2 | $0.00 | $25.00 | $40.31 | $1,375.00 | $241.88 | $1,616.88 |
| 7/22/12 - 7/28/12 | 40 | 5 | 2 | $0.00 | $25.00 | $40.31 | $1,230.63 | $201.56 | $1,432.19 |
| 7/29/12 - 8/4/12 | 40 | 5 | 5 | $0.00 | $25.00 | $40.31 | $1,230.63 | $80.63 | $1,230.63 |
| 8/5/12 - 8/11/12 | 40 | 13 | 0 | $0.00 | $25.00 | $40.31 | $1,375.00 | $524.06 | $1,818.44 |
| 8/12/12 - 8/18/12 | 40 | 11 | 0 | $0.00 | $25.00 | $40.31 | $1,375.00 | $443.44 | $1,899.06 |
| 8/19/12 - 8/25/12 | 40 | 0 | 0 | $0.00 | $25.00 | $0.00 | $1,375.00 | $0.00 | $1,375.00 |
| 8/26/12 - 9/1/12 | 30 | 0 | 9 | $0.00 | $25.00 | $0.00 | $675.00 | $0.00 | $675.00 |
| 9/2/12 - 9/8/12 | 6.5 | 0 | 9 | $0.00 | $25.00 | $0.00 | $675.00 | $0.00 | $675.00 |
| 9/9/12 - 9/15/12 | 12 | 0 | 9 | $0.00 | $25.00 | $0.00 | $675.00 | $0.00 | $675.00 |
| 9/16/12 - 9/22/12 | 13.5 | 0 | 9 | $0.00 | $25.00 | $0.00 | $675.00 | $0.00 | $675.00 |
| 9/23/12 - 9/29/12 | 20 | 0 | 15 | $0.00 | $25.00 | $0.00 | $375.00 | $0.00 | $375.00 |
| 9/30/12 - 10/6/12 | 13 | 0 | 6 | $0.00 | $25.00 | $0.00 | $450.00 | $0.00 | $450.00 |
| 10/7/12 - 10/13/12 | 15 | 0 | 6 | $0.00 | $25.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/14/12 - 10/20/12 | 11 | 0 | 6 | $0.00 | $25.00 | $0.00 | $450.00 | $0.00 | $450.00 |
| 10/21/12 - 10/27/12 | 12 | 0 | 5 | $0.00 | $25.00 | $0.00 | $375.00 | $0.00 | $375.00 |
| 10/28/12 - 11/3/12 | 3 | 0 | 1 | $0.00 | $25.00 | $0.00 | $75.00 | $0.00 | $75.00 |
| **SUBTOTAL** | 841.5 | 64 | 203.5 | $75.00 | | | $28,675.00 | $2,580.00 | $31,255.00 |
| **AMOUNT ACTUALLY PAID** | | | | | | | | | $5,678.85 |
| **TOTAL OWED:** | | | | | | | | | $25,576.15 |

* ((Hourly rate x Total Hours + Call Pay) / Total Hours) x 1.5 = OT Rate

EXHIBIT F



**TREPANIER &**
**MACGILLIS** P.A.
*attorneys at law*

WRITER'S DIRECT DIAL:

Kelly M. (Fiege) Dougherty, Esq.
Telephone: 612-455-0504
kdougherty@trepanierlaw.com

May 7, 2013

<u>Via U.S. Mail</u>

Premier Diagnostic Imaging, Inc.
Attn: Kim Algoo, President and CEO
    Amy Gaston, Director of Marketing
      & Strategic Alliances
10800 Lyndale Avenue South, Suite 150
Bloomington, MN 55420

Integrity Medical Imaging, LLC
Attn: Kim Algoo, President
    Amy Gaston, Executive Vice
      President
1625 #A Hennepin Avenue
Minneapolis, MN 55403

Re:   *Demand for Unpaid Wages to Premier Diagnostic Imaging, Inc. and*
       *Integrity Medical Imaging, LLC*
       Our File No. 1021-001

Dear Ms. Algoo and Ms. Gaston:

     I am writing on behalf of Joshua Peterson, Jennifer Miller, Alicia Griffin, Katie Stone, and Jen Schauls (collectively referred to as "**Employees**"). This will serve as the Employee's formal demand upon Premier Diagnostic Imaging, Inc. ("PDI") and Integrity Medical Imaging, LLC ("IMI") for all earned but unpaid wages, bonuses, commissions, and other compensation due to the Employees from the PDI and IMI.

     This includes all earned but unpaid salary, wages, overtime, bonuses, incentives, commissions, vacation pay, personal time off ("**PTO**"), personal leave, paid holidays, sick pay, employer-sponsored health insurance or other premiums, stock-based compensation or stock options, severance payments under any plan, agreement, or practice, expense reimbursements, and all other forms of compensation, remuneration, and benefits.

     Under Minn. Stat. § 181.14, when any employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject to a collective bargaining agreement with a different provision. If the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment.



Premier Diagnostic Imaging, Inc.
Integrity Medical Imaging, LLC
May 7, 2013
Page 2

        Failure to pay these amounts may result in PDI and IMI incurring additional damages, penalties, interest, and liability to pay the Employees' attorney's fees and costs under applicable law.

        Please mail all payments to me at the above address.

        Sincerely,

        TREPANIER & MACGILLIS P.A.

        Kelly M. Dougherty

Enclosures

cc:    Joshua Peterson (w/enc.) (via e-mail)
      Jennifer Miller (w/enc.) (via e-mail)
      Alicia Griffin (w/enc.) (via e-mail)
      Katie Stone (w/enc.) (via e-mail)
      Jen Schauls (w/enc.) (via e-mail)

Spreadsheet of Unpaid Wages to Alicia Griffin

| Date (Sunday through Saturday) | Calls | Call Pay (Per Job/Fees) | Total Wages for the Week |
|---|---|---|---|
| 4/15/12 - 4/21/12 | 3 | $75.00 | $225.00 |
| 4/22/12 - 4/28/12 | 2 | $75.00 | $150.00 |
| 4/29/12 - 5/5/12 | 3 | $75.00 | $225.00 |
| 5/6/12 - 5/12/12 | 3 | $75.00 | $225.00 |
| 5/13/12 - 5/19/12 | 3 | $75.00 | $225.00 |
| 5/20/12 - 5/26/12 | 1 | $75.00 | $75.00 |
| 5/27/12 - 6/2/12 | 1 | $75.00 | $75.00 |
| 6/3/12 - 6/9/12 | 2 | $75.00 | $150.00 |
| 6/10/12 - 6/16/12 | 2 | $75.00 | $150.00 |
| 6/17/12 - 6/23/12 | 2 | $75.00 | $150.00 |
| 6/24/12 - 6/30/12 | 1.5 | $75.00 | $112.50 |
| 7/1/12 - 7/7/12 | 0 | $75.00 | $0.00 |
| 7/8/12 - 7/14/12 | 0 | $75.00 | $0.00 |
| 7/15/12 - 7/21/12 | 2 | $75.00 | $150.00 |
| SUBTOTAL | 25.5 | | $1,912.50 |
| AMOUNT ACTUALLY PAID | | | $1,912.50 |
| TOTAL OWED: | | | $559.66 |

EXHIBIT
H

To:     Premier Diagnostic Imaging, Inc.
        Attn: Kim Algoo, President and CEO
        10800 Lyndale Avenue South, Suite 150
        Bloomington, MN 55420

From:   Katie Stone
        4041 44th Ave S.
        Minneapolis, MN 55406

Re:     *Demand for Wages*

Date:   May 6, 2013

---

This will serve as my formal demand upon Premier Diagnostic Imaging, Inc. (the **"Company"**) for all earned but unpaid wages, bonuses, commissions, and other compensation due to me from the Company.

This includes all earned but unpaid salary, wages, overtime, bonuses, incentives, commissions, vacation pay, personal time off (**"PTO"**), personal leave, paid holidays, sick pay, employer-sponsored health insurance or other premiums, stock-based compensation or stock options, severance payments under any plan, agreement, or practice, expense reimbursements, and all other forms of compensation, remuneration, and benefits.

Under Minn. Stat. § 181.14, when any employee quits or resigns employment, the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment, unless an employee is subject to a collective bargaining agreement with a different provision. If the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment.

Failure to pay these amounts may result in the Company incurring additional damages, penalties, interest, and liability to pay my attorney's fees and costs under applicable law.

A copy of this authorization shall be valid and may be relied on as if it were the signed original.

Please mail all payments to me at the above address.


_Katie Stone_                              5|7|13
Katie Stone (Signature)                    (Date)


EXHIBIT
I

Spreadsheet of Unpaid Wages to Katie Stone

| Date (Sunday through Saturday) | # of Practice Hours | # of Games/Calls | CallBEAV per Facility Fees | Hourly Receipts Pay | Amount of Regular Pay | Total Wages due in the Week |
|---|---|---|---|---|---|---|
| 5/13/12 - 5/19/12 | 0 | | $75.00 | $0.00 | $0.00 | $0.00 |
| 5/20/12 - 5/26/12 | 0 | 2 | $75.00 | $0.00 | $150.00 | $150.00 |
| 5/27/12 - 6/2/12 | 0 | 4 | $75.00 | $0.00 | $300.00 | $300.00 |
| 6/3/12 - 6/9/12 | 4 | 1 | $75.00 | $12.00 | $123.00 | $123.00 |
| 6/10/12 - 6/16/12 | 9 | 0 | $75.00 | $12.00 | $108.00 | $108.00 |
| 6/17/12 - 6/23/12 | 16.5 | 4 | $75.00 | $12.00 | $498.00 | $498.00 |
| 6/24/12 - 6/30/12 | 0 | 1 | $75.00 | $0.00 | $75.00 | $75.00 |
| 7/1/12 - 7/7/12 | 0 | 2 | $75.00 | $0.00 | $150.00 | $150.00 |
| 7/8/12 - 7/14/12 | 0 | 1 | $75.00 | $0.00 | $75.00 | $75.00 |
| 7/15/12 - 7/21/12 | 0 | 4 | $75.00 | $0.00 | $300.00 | $300.00 |
| 7/22/12 - 7/28/12 | 0 | 0 | $75.00 | $0.00 | $0.00 | $0.00 |
| 7/29/12 - 8/4/12 | 0 | 1 | $75.00 | $0.00 | $75.00 | $75.00 |
| 8/5/12 - 8/11/12 | 0 | 1 | $75.00 | $0.00 | $75.00 | $75.00 |
| 8/12/12 - 8/18/12 | 0 | 0 | $75.00 | $0.00 | $0.00 | $0.00 |
| 8/19/12 - 8/25/12 | 0 | 0 | $75.00 | $0.00 | $0.00 | $0.00 |
| 8/26/12 - 9/1/12 | 0 | 0 | $75.00 | $0.00 | $0.00 | $0.00 |
| 9/2/12 - 9/8/12 | 0 | 0 | $75.00 | $0.00 | $0.00 | $0.00 |
| 9/9/12 - 9/15/12 | 0 | 2 | $75.00 | $0.00 | $150.00 | $150.00 |
| 9/16/12 - 9/22/12 | 0 | 0 | $75.00 | $0.00 | $0.00 | $0.00 |
| SUBTOTAL | 29.5 | 23 | | | $2,079.00 | $2,079.00 |
| AMOUNT ACTUALLY PAID | | | | | | $501.50 |
| TOTAL OWED: | | | | | | $1,577.50 |

EXHIBIT
J

Fw: Demand for payment

**Subject:** Fw: Demand for payment
**From:** Jen <chinakat74@yahoo.com>
**Date:** 11/14/2012 7:50 AM
**To:** Jenny <jenny-miller@comcast.net>

----- Forwarded Message -----
**From:** Jen <chinakat74@yahoo.com>
**To:** Kim Algoo <kim.algoo@gmail.com>
**Sent:** Thursday, September 27, 2012 9:05 AM
**Subject:** Re:

Sounds good.

You can consider this my demand for payment. I expect to receive wages owed me from the work I have performed for you and now Dr. Chepuri under both Premier and Integrity within 30 days. Which is more than is deserved. I have attached all of my time sheets. I will not take you to court at this time, you don't respond or show up for them. I will take it to the media and schools to explain how you are taking advantage of new grads by working their asses off and then refusing to pay them. I could also tell the techs how you are planning on firing them also when you find replacements for them.

| | | |
|---|---|---|
| Reg hours: 175.25 (+8 hours from 9/24) 183.25 @ $25/hr | = | $4581.25 |
| OT hours: 9 | | $1125 |
| Echos: 22 (+1 from 9/24) 23 | | $2875 |
| Milage: 533 mi (=13 from 9/24) 546 mi | | $273 |
| Weekend workflow (last two weekends 0700-2200)@ $5/hr | | $300 |
| | | $9154.25 |
| | | - $1000 paid |
| | | $8154.25 |

It is too bad that I have to be put in this position. But, as a business owner you are required to pay people for work done and you have chosen not to do that. Calls into the BBB and Attorney General's office might also be in order if you refuse to take care of your professional obligations to me.

Jen

**From:** Kim Algoo <kim.algoo@gmail.com>
**To:** Jen <chinakat74@yahoo.com>
**Sent:** Thursday, September 27, 2012 8:14 AM
**Subject:** Re:

Ok. We will no longer contact you. I was actually doing it against advice. I figured you would do in respect to patient care.
It is no longer my company....all shares were sold. All of mine to Dr. Chepuri. In any case good luck. We will be fine. In this economy the one thing there isn't a shortage of is employees.
I wish you well.
On Sep 27, 2012 8:04 AM, "Jen" <                    > wrote:

EXHIBIT
K

11/14/2012 8:34 AM

Home (/)          Search (/Business/Search)          Filings (/Business/Filings)

## Search » Business Filings

### Business Record Details »

[« Back to Search Results]



| Minnesota Business Name |
| --- |
| **Integrity Medical Imaging, LLC** |

Business Type
**Limited Liability Company (Domestic)**

MN Statute
**322B**

File Number
**614454100033**

Filing Date
**8/20/2012**

Status
**Active / In Good Standing**

Renewal Due Date:
**12/31/2013**

Registered Office Address
**1625 #A Hennepin Ave**
**Mpls MN 55403**
**USA**

Registered Agent(s)
**Kim Singh Algoo**

| Filing History |
| --- |

Filing History

| 8/20/2012 | Original Filing - Limited Liability Company (Domestic) |
| --- | --- |



Office of the MN Secretary of State          System Requirements          Additional MBLS Information
Home Page

(http://www.sos.state.mn.us)

The MBLS application works with the following web browsers:

- Microsoft Internet Explorer (version 7+)
- Mozilla Firefox (version 3.5+)
- Apple Safari (version 3+)
- Google Chrome

Terms & Conditions (http://www.sos.state.mn.us/index.a page=1667)
Contact Us (http://www.sos.state.mn.us/index.a page=42)
Frequently Asked Questions (FAQ) (http://www.sos.state.mn.us/index.a page=12)

Copyright 2011 | Secretary of State of Minnesota | All rights reserved



September 20, 2012

Dear Accounts Payable:

This letter is to inform you that Integrity Medical Imaging (Integrity) has purchased Premier Diagnostic Imaging, Inc. (Premier) effective immediately. In doing so, Integrity now holds all interests formerly by Premier. Please note the new Tax ID and business address below. For the enclosed invoices and for all future accounts payable, please address payment to Integrity and use the new ID. The Medicare Part A discount contracted with Premier will continue to be honored by Integrity and new service contracts will be signed with your executive team.

Integrity Medical Imaging
1625 Hennepin Ave.
Minneapolis, MN 55403
Tax I.D. 888888888888888

Thank you for your business and understanding during this time of transition. Please contact Kim Algoo at kalgoo@pdimagingmn.com or 612-964-1810.

Sincerely,

Accounts Receivable
Integrity Medical Imaging

CC:  Kim Algoo



, Fw: Demand for payment

**Subject:** Fw: Demand for payment
**From:** Jen <chinakat74@yahoo.com>
**Date:** 11/14/2012 7:50 AM
**To:** Jenny <jenny-miller@comcast.net>

----- Forwarded Message -----
**From:** Jen <chinakat74@yahoo.com>
**To:** Kim Algoo <kim.algoo@gmail.com>
**Sent:** Thursday, September 27, 2012 9:05 AM
**Subject:** Re:

Sounds good.

You can consider this my demand for payment. I expect to receive wages owed me from the work I have performed for you and now Dr. Chepuri under both Premier and Integrity within 30 days. Which is more than is deserved. I have attached all of my time sheets. I will not take you to court at this time, you don't respond or show up for them. I will take it to the media and schools to explain how you are taking advantage of new grads by working their asses off and then refusing to pay them. I could also tell the techs how you are planning on firing them also when you find replacements for them.

Reg hours:  175.25 (+8 hours from 9/24)  183.25 @ $25/hr  = $4581.25
OT hours:  9                                                $1125
Echos:  22 (+1 from 9/24)  23                               $2875
Milage:  533 mi (=13 from 9/24)  546 mi                     $273
Weekend workflow (last two weekends 0700-2200)@ $5/hr  $300
                                                           $9154.25
                                                        - $1000 paid
                                                           $8154.25

It is too bad that I have to be put in this position. But, as a business owner you are required to pay people for work done and you have chosen not to do that. Calls into the BBB and Attorney General's office might also be in order if you refuse to take care of your professional obligations to me.

Jen

**From:** Kim Algoo <kim.algoo@gmail.com>
**To:** Jen <chinakat74@yahoo.com>
**Sent:** Thursday, September 27, 2012 8:14 AM
**Subject:** Re:

Ok. We will no longer contact you. I was actually doing it against advice. I figured you would do in respect to patient care.
It is no longer my company....all shares were sold. All of mine to Dr. Chepuri. In any case good luck. We will be fine. In this economy the one thing there isn't a shortage of is employees.
I wish you well.
On Sep 27, 2012 8:04 AM, "Jen" <                    > wrote:

EXHIBIT
N

11/14/2012 8:34 AM

Fw: Demand for payment

I had turned off my phone and haven't checked my email for the last couple days. I quit working for you and your company, not just the office manager/workflow position. Here is my dilemma. Since you have barely paid me, I am put in another position with your company where I feel as though I am whoring myself out. My kid needs a tablet for school and since I have been given minimal compensation for the work I have done for you, I am actually considering this. You need to work on getting another echo tech though. I cannot emotionally do this to myself. If you need me to do this echo, I need the $200 cash in hand before I perform the exam.

Kim, if you don't give a shit about your business (enough to do the bare minimum and that is pay your staff and give them minimal resources) then no one else will. I don't see a bit of pride at all in your company and that is why you tried to make me feel like crap for not working for you. I put my heart and soul into your company while I was there and got nothing by disrespect in return. I do the right thing, because it's the right thing to do!! And in my mind, that is the true meaning of *integrity*.

Jen

**From:** Kim Algoo <                    >
**To:** Jen <                         >
**Sent:** Wednesday, September 26, 2012 6:56 PM
**Subject:** Re:

Jen,
I sent you a text on doing the echo tonight for us. Neeraj gave me 200 to get someone to do it. I will give it to you even before the exam, will you please do it tonite for us?
On Sep 25, 2012 5:22 PM, "Kim Algoo" <                    > wrote:
> Yes, I know Jen. I am with him and actually advocating for you! Believe it or not...I am advocating for you! Not me, not another employee but you. We need you as an echo tech. We don't need the administrative function. We need an echo tech. We need you as an echo tech.
> On Sep 25, 2012 5:18 PM, "Jen" <                    > wrote:
>> At this point, I don't want either. It is tearing away at my soul. I'm pissed all the time. And I can't go visit my son because you won't/can't pay Mindy to be a backup for just a day.
>>
>> Like I just said to Dr. Chepuri, I am halfway through a bottle of Merlot right now.
>>
>> Jen

**From:** Kim Algoo <                    >
**To:** Jen <                         >
**Sent:** Tuesday, September 25, 2012 5:10 PM
**Subject:** Re:

Jen,
I understand. I really do. I know you may not believe me but I am where you are. We do have a chance to fix this and move forward. I would like you to stay on as an echo tech....not administratively.

Fw: Demand for payment

You are not working for me, you are working for Dr. Chepuri.
On Sep 25, 2012 5:04 PM, "Jen" <                    > wrote:
You dang well know it's not about pay for me. I will not work for a company that does not respect it's employees enough to be honest with them about money and pay them a decent wage. I am tired of not having ANY RESOURCES. No gas in the car. No money for the meter. No ink for the printer. No training for me or anyone else. And mostly, NO XRAY TECHS.

The job as front desk is no big deal. Easy as pie. At least if I had everything I need to do my job.

I have very high work ethic. Especially when it comes to my patients. The problem here is that you don't, as far as I have been able to see. You haven't paid any bills that I can tell of (the phone call I got said you have never made a payment at all on the US machine we have). You are asking me to deliver bad checks (that is illegal by the way), lie to facilities (my tech is in Stillwater when there isn't one for another couple hours is a lie), and take all the brunt of it for you. You won't even talk to the techs directly. You tried to get me to do all your dirty work. I can do that to a point, but not when it comes to deceiving people, especially those who are becoming my friends. And not to mention, I can't get enough time off to take a test without my phone blowing up about gas (from both of you asking the same damn question).

Jen

Attachments:

Jen timesheets.pdf                                                    9.1 MB

11/14/2012 8:34 AM

Home (/)        Search (/Business/Search)        Filings (/Business/Filings)

Search » Business Filings

## Business Record Details »

<span style="float:right">« Back to Search Results</span>



Minnesota Business Name
**Minnesota Medical Imaging, LLC**

Business Type
**Limited Liability Company (Domestic)**

MN Statute
**322B**

File Number
**627741500028**

Filing Date
**11/15/2012**

Status
**Active / In Good Standing**

Renewal Due Date:
**12/31/2013**

Registered Office Address
**2929 Chicago Ave S #140**
**Mpls MN 55407**
**USA**

Registered Agent(s)
(Optional) None provided

| Filing History |
|---|

**Filing History**

| 11/15/2012 | Original Filing - Limited Liability Company (Domestic) |
|---|---|



Office of the MN Secretary of State
Home Page

System Requirements

Additional MBLS Information

(http://www.sos.state.mn.us)

The MBLS application works with the following web browsers:

- Microsoft Internet Explorer (version 7+)
- Mozilla Firefox (version 3.5+)
- Apple Safari (version 3+)
- Google Chrome

Terms & Conditions
(http://www.sos.state.mn.us/index.a
page=1667)
Contact Us
(http://www.sos.state.mn.us/index.a
page=42)
Frequently Asked Questions (FAQ)
(http://www.sos.state.mn.us/index.a
page=12)

Copyright 2011 | Secretary of State of Minnesota | All rights reserved



INTEGRITY
MEDICAL IMAGING

September 20, 2012

Dear Accounts Payable:

This letter is to inform you that Integrity Medical Imaging (Integrity) has purchased Premier Diagnostic Imaging, Inc. (Premier) effective immediately. In doing so, Integrity now holds all interests formerly by Premier. Please note the new Tax ID and business address below. For the enclosed invoices and for all future accounts payable, please address payment to Integrity and use the new ID. The Medicare Part A discount contracted with Premier will continue to be honored by Integrity and new service contracts will be signed with your executive team.

Integrity Medical Imaging
1625 Hennepin Ave.
Minneapolis, MN 55403
Tax I.D. 888888888888888

Thank you for your business and understanding during this time of transition. Please contact Kim Algoo at kalgoo@pdimagingmn.com or 612-964-1810.

Sincerely,

Accounts Receivable
Integrity Medical Imaging

CC:  Kim Algoo



EXHIBIT
P

1625 Hennepin Ave. • Minneapolis, MN 55403. • 952-955-8010



**About Minnesota Medical Imaging**

Home | About MMI | Services | Technology | News & Events | Contact Us

Facility Login
Corporate Login
Physician Login

Powered By
MediMatrix

Minnesota Medical Imaging believes that its affiliation with a local radiology group not only ensures the fastest turnaround time and allows for open dialogue with your staff and medical director, but our founders believe it is beneficial to the community at large and the economic health of the area to partner with a trusted local company.

Whereas most portable imaging companies have just one Medical Director - MMI is guided by a comprehensive team of four Medical Directors, which includes a Clinical Radiologist, an Administrative Radiologist, a Cardiologist and a Long-term Care Director. This combined and diverse expertise guarantees that the best service is delivered to each patient that we serve.

Boasting the fastest turn around time in the market -- MMI believes this would mean nothing without also providing the very best in digital technology, quality assurance, customer care and qualified experts to deliver this care.

Minnesota Medical Imaging is committed to delivering compassionate care to the patients it serves and the families who love them.

**Meet the Leadership Team**

Phone: 612-354-3360 | Fax: 612-315-4185 | info@mnmedimaging.com | 2110 Nicollet Ave. S. Suite 103, Mpls, MN 55405



## About Minnesota Medical Imaging

**Home**   **About MMI**   **Services**   **Technology**   **News & Events**   **Contact Us**

Facility Login
Corporate Login
Physician Login

Powered By
MediMatrix

Minnesota Medical Imaging is committed to delivering compassionate care to the patients it serves and the families who love them.

Minnesota Medical Imaging believes that its affiliation with a local radiology group not only ensures the fastest turnaround time and allows for open dialogue with your staff and medical director, but our founders believe it is beneficial to the community at large and the economic health of the area to partner with a trusted local company.

Whereas most portable imaging companies have just one Medical Director – MMI is guided by a comprehensive team of four Medical Directors, which includes a Clinical Radiologist, an Administrative Radiologist, a Cardiologist and a Long-term Care Director. This combined and diverse expertise guarantees that the best service is delivered to each patient that we serve.

Boasting the fastest turn around time in the market – MMI believes this would mean nothing without also providing the very best in digital technology, quality assurance, customer care and qualified experts to deliver this care.

**Meet the Leadership Team**

Phone: 612-354-3360 | Fax: 612-315-4185 | info@mnmedimaging.com | 2110 Nicollet Ave. S. Suite 103 Mpls. MN 55408


EXHIBIT
Q

2/15/13                                     About Premier



## About Premier

Premier Diagnostic Imaging is committed to delivering compassionate care to the patients it serves and the families who love them.

Premier believes that its affiliation with the established local radiology group, Consulting Radiologists, Ltd (CRL), not only ensures the fastest turnaround time and allows for open dialogue with your staff and medical director, but our founders believe it is beneficial to the community at large and the economic health of the area to partner with a trusted local company.

Whereas most portable imaging companies have just one Medical Director - Premier is guided by a comprehensive team of four Medical Directors, which includes a Clinical Radiologist, an Administrative Radiologist, a Cardiologist and a Long-term Care Director. This combined and diverse expertise guarantees that the best service is delivered to each patient that we serve.

Boasting the fastest turn around time in the market — Premier believes this would mean nothing without also providing the very best in digital technology, quality assurance, customer care and qualified experts to deliver this care.

Meet the Leadership Team

Phone: 952-955-8010 • Fax: 952-345-0295 • info@pdimagingmn.com • 10800 Lyndale Ave. S. Bloomington, MN 55420

Filed in Fourth Judicial District Court
1/28/2013 3:20:14 PM
Hennepin County Civil, MN

STATE OF MINNESOTA                               DISTRICT COURT

COUNTY OF HENNEPIN                   FOURTH JUDICIAL DISTRICT

Shawn Knoth,

         Plaintiff,

       vs.

Premier Diagnostic Imaging, Inc.,
Integrity Medical Imaging, LLC,
Kim Algoo, Shriani Holdings, LLC,
and John Does 1-10,

         Defendants.

Case Type: Employment

Court File No. 27-CV-12-13809

The Honorable Bruce A. Peterson

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEFAULT JUDGMENT

The above-entitled matter came before the undersigned on the Motion for Default Judgment brought by Plaintiff Shawn Knoth ("Plaintiff"), through his undersigned counsel, on January 15, 2013 at 1:30 p.m. against Defendants Premier Diagnostic Imaging, Inc. ("PDI"), Integrity Medical Imaging, LLC ("IMI"), Kim Algoo ("Algoo"), Shriani Holdings, LLC ("Shriani") and John Does 1-10 (collectively PDI, IMI, Algoo, Shriani, and John Does 1-10 are referred to as the "Defendants").

Plaintiff was represented by Craig W. Trepanier, Esq. and Kelly M. Fiege, Esq., Trepanier & MacGillis P.A., 8000 Flour Exchange Building, 310 Fourth Avenue South, Minneapolis, Minnesota 55415.  Plaintiff also appeared in person at the hearing and testified.

Defendants failed to appear individually or through legal counsel.

Based upon the arguments of counsel, the testimony of Plaintiff, the Amended Complaint, the Memorandum of Law in Support of the Motion for Default Judgment, and the

1



Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

affidavits submitted therewith, the Court makes the following:

## FINDINGS OF FACT:

1.     Plaintiff began working at PDI on or about November 15, 2011 as an ultrasound technician.

2.     As part of his duties, Plaintiff traveled to patients as directed by PDI and performed ultrasound tests on patients.

3.     PDI paid Plaintiff $75.00 per job plus $25.00 for each day he was on call.  PDI also reimbursed Plaintiff for his mileage at $0.50 per mile.

4.     PDI stopped paying wages to Plaintiff on or about December 25, 2011.

5.     Plaintiff requested payment of his wages in a conversation with an employee K.D. in PDI's payroll department, and later in a conversation with PDI's President, Algoo.

6.     Both Algoo and K.D. told Plaintiff that the reason he had not been paid was because PDI was waiting for payment from insurance companies.  Both Algoo and K.D. promised that PDI would pay Plaintiff upon receipt of this money.

7.     Despite PDI's failure to pay, and relying on the promises of PDI and Algoo to pay when payment had been received by the insurance companies, Plaintiff continued to work for PDI from December 25, 2011 to March 24, 2012.

8.     From December 25, 2011 to March 24, 2012, Plaintiff worked more than forty (40) hours in certain workweeks.  During the same time period, Plaintiff worked more than forty-eight (48) hours in certain workweeks.

9.     When PDI still had not paid Plaintiff's wages several months after his initial request, Plaintiff made demands for the payment of these wages in writing on March 15, 2012, on March 19, 2012, and again on April 6, 2012.

10.    Plaintiff tendered his resignation effective on March 24, 2012.

2

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

11.   PDI has failed to pay Plaintiff a total of $16,418.24 in wages and $496.00 in unpaid mileage reimbursements for the time period of December 25, 2011 to March 24, 2012. The amount of unpaid wages and unpaid mileage reimbursements owed by PDI to Plaintiff is reflected in Exhibit I, which is hereby incorporated by reference.

12.   At a time when PDI owed Plaintiff for his unpaid wages and PDI was not paying its financial obligations when they were due, Defendants PDI, IMI, and Algoo (1) started a new company (IMI) as a medical imaging company; (2) utilized the same employees who performed the same work at the same locations as they previously did for PDI; (3) allowed IMI to take over PDI's previous contracts and clients; (4) allowed IMI to use the same equipment that PDI was using; (5) allowed IMI to use the same phone number that PDI was using; and (6) by all appearances, continued the business of PDI under a different name (IMI).

13.   On October 24, 2012, Plaintiff served PDI, IMI, Algoo, and Shriani a copy of the Amended Summons and Amended Complaint. Examination of the court files and records in this case shows that LeShel Balgie, an adult, served PDI, IMI, Algoo, and Shriani with these documents on that date by handing a copy to Algoo, identified as PDI's President, IMI's President, and Shriani's President.

14.   More than twenty (20) days have elapsed since the date on which PDI, IMI, Algoo, and Shriani were served with a copy of the Amended Summons and Amended Complaint, excluding the dates of service.

15.   Defendants have failed to answer or defend as to Plaintiff's Amended Complaint, or serve a copy of any answer or any other defense upon the attorneys of record for Plaintiff.

16.   Defendants are not in the military service of the United States.

17.   Minn. R. Gen. P. 117.01 provides that, although default hearings are scheduled as motions, none of the provisions of Rule 115 regarding service of motion papers on the non-

3

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

moving party apply to default hearings. Nonetheless, examination of the court files and records in this case shows that, on December 31, 2012, Kelly M. Fiege served by U.S. mail Defendants PDI, IMI, and Algoo with the following papers in support of Plaintiff's Motion for Default Judgment: (1) Notice of Motion and Motion for Default Judgment; (2) Plaintiff's Memorandum of Law in Support of Motion for Default Judgment; (3) Affidavit of Identification, Non-Answer, and Amount Due; (4) Affidavit of Craig W. Trepanier as to Attorney's Fees, Costs, Liquidated Damages, and Civil Penalties; and (5) Second Affidavit of Shawn Knoth. Defendants PDI, IMI, and Algoo have had a full and fair opportunity to litigate the issues raised by Plaintiff's Motion for Default Judgment. Nonetheless, Defendants failed to appear or litigate these issues.

18.     Plaintiff sought reimbursement of attorney's fees and costs in the amount of $13,682.32. The Court finds that a reasonable award of attorney's fees and costs is $10,000.00, taking into consideration certain duplication of hours in connection with Plaintiff's earlier motion for default judgment which was later withdrawn and the amendment to the Complaint.

## CONCLUSIONS OF LAW:

### Breach of Contract

19.     PDI has breached its contractual obligations by failing to pay Plaintiff all compensation and expense reimbursements owed to him.

20.     Plaintiff is entitled to unpaid wages and overtime in the amount of $16,418.24.

21.     Plaintiff is entitled to unpaid mileage reimbursements in the amount of $496.00.

### Violation of Minn. Stat. § 181.14

22.     Plaintiff is an employee within the meaning of Minn. Stat. § 181.14.

23.     PDI is an employer within the meaning of Minn. Stat. §§ 181.14 and 181.171.

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

24.    PDI violated Minn. Stat. § 181.14 by failing to make full payment to Plaintiff for the wages actually earned as of March 24, 2012, for a period exceeding fifteen (15) days following the 24-hour period after Plaintiff's written demand on April 6, 2012.

25.    In accordance with the holding in *Oris v. Mattila*, 160 N.W.2d 691, 700 (Minn. 1968), the penalty which is due under Minn. Stat. § 181.14 is inapplicable in this case because Plaintiff is entitled to an award of liquidated damages under the Fair Labor Standards Act in an amount in excess of the penalty under Minn. Stat. § 181.14.

### Violation of Federal Fair Labor Standards Act (29 U.S.C. § 207(a)(1))

26.    Plaintiff is an employee within the meaning of 29 U.S.C. § 203(e)(1).

27.    PDI is an employer within the meaning of 29 U.S.C. § 203(d).

28.    Algco is an employer within the meaning of 29 U.S.C. § 203(d).

29.    Plaintiff is not exempt from the minimum wage or overtime requirements of the Fair Labor Standards Act ("FLSA").

30.    Defendants PDI and Algco violated the FLSA by failing to pay minimum wages due and owing to Plaintiff at the federal minimum wage rate of $7.25 per hour for certain hours as required by 29 U.S.C. § 206(a).

31.    Defendants PDI and Algco violated the FLSA by failing to compensate Plaintiff for certain hours worked in excess of forty (40) hours per week at a rate of at least one and one-half times his regular rate of pay, as required by 29 U.S.C. § 207(a)(1).

32.    Pursuant to 29 U.S.C. § 216(b), Defendants PDI and Algco owe Plaintiff the following unpaid minimum wages, overtime pay, and an additional equal amount as liquidated damages in the amount of $4,483.26:

### Unpaid Minimum Wage

Total Hours Worked (Unpaid):     446.9

5

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

Minimum Wage Rate:          $7.25 per hour
Total Unpaid Minimum Wage:  446.9 x $7.25 = $3,240.02

Unpaid Overtime

Amount of Overtime Pay Owed:   $1,243.24 (as calculated in Exhibit 1)

Total Liquidated Damages

Total Unpaid Minimum Wage:   $3,240.02
Amount of Overtime Pay Owed: $1,243.24
Total Liquidated Damages:    $3,240.02 + $1,243.24 = $4,483.26

33.     Pursuant to 29 U.S.C. § 216(b), Defendants PDI and Algoo owe Plaintiff attorney's fees and costs in the amount of $10,000.00.

34.     Algoo, as an officer of PDI and IMI, is personally liable to Plaintiff for his claims under the FLSA. *See, e.g., Saunders v. Ace Mortgage Funding, Inc.*, Civ. No. 05-1437, 2007 U.S. Dist. LEXIS 85392, at *14-16 (D. Minn. Nov. 16, 2007); *Karl v. Uptown Drink, LLC*, Civ. No. 27-CV-10-1926, 2010 Minn. Dist. LEXIS 12, at *9-10 (Minn. Dist. Ct. Oct. 6, 2010).

### Violation of Minnesota Fair Labor Standards Act (Minn. Stat. § 177.25)

35.     Plaintiff is an employee within the meaning of Minn. Stat. § 177.23, subd. 7.

36.     PDI is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

37.     Algoo is an employer within the meaning of Minn. Stat. § 177.23, subd. 6.

38.     Plaintiff is not exempt from the minimum wage or overtime requirements of the Minnesota Fair Labor Standards Act ("MFLSA").

39.     Defendants PDI and Algoo violated the MFLSA by failing to pay minimum wages due and owing to Plaintiff at the Minnesota state minimum wage rate of $6.15 per hour for certain hours as required by Minn. Stat. § 177.24.

6

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

40.     Defendants PDI and Algoo violated the MFLSA by failing to compensate Plaintiff for certain hours worked in excess of forty-eight (48) hours per week at a rate of at least one and one-half times his regular rate of pay, as required by Minn. Stat. § 177.25.

41.     Pursuant to Minn. Stat. §§ 177.27, subds. 7-8, Plaintiff is entitled to civil penalties.

42.     The Court finds that a penalty in the amount of $1,000 per violation is appropriate.

43.     The Court finds that Defendants repeatedly violated the MFLSA during twelve consecutive weeks, and that each week represents a violation of the MFLSA.

44.     Plaintiff is entitled to civil penalties in the amount of $12,000.00.

45.     Pursuant to Minn. Stat. §§ 177.27, subd. 10, Plaintiff is entitled to attorney's fees and costs in the amount of $10,000.00.

46.     Algoo, as an officer of PDI and IML, is personally liable to Plaintiff for his claims under the MFLSA. *See, e.g., Karl v. Uptown Drink, LLC,* Civ. No. 27-CV-10-1926, 2010 Minn. Dist. LEXIS 12, at *7-8 (Minn. Dist. Ct. Oct. 6, 2010); *Ryan v. Traditional Value, Inc.,* Civ. No. 27-CV-08-1347, at *5 (Minn. Dist. Ct. July 22, 2008); *Davis v. Litespa, Inc.,* Civ. No. 27-CV-06-6818 (Minn. Dist. Ct. Feb. 5, 2007).

### Minn. Stat. § 513.44 Relief From Fraudulent Transfer

47.     Plaintiff is a "creditor" of PDI within the meaning of Minn. Stat. § 513.44.

48.     Plaintiff is a creditor with a "claim" against PDI within the meaning of Minn. Stat. § 513.44.

49.     Defendant PDI is a "debtor" within the meaning of Minn. Stat. § 513.44.

50.     Defendant PDI does not deny that it made a "transfer" within the meaning of Minn. Stat. § 513.46.

7

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

51.     Defendant PDI does not deny that it made a transfer of all or substantially all of its assets to Defendants IMI with the actual intent to hinder, delay, or defraud creditors including Plaintiff, and without receiving a reasonably equivalent value in exchange for the transfer.

52.     Defendant PDI does not deny that it engaged or was about to engage in a transaction for which its remaining assets were unreasonably small in relation to the transaction including, but not limited to, hiring Plaintiff, continuing to accept services from Plaintiff, and inducing Plaintiff to continue his employment.

53.     Defendant PDI does not deny that it intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they became due by taking actions including, but not limited to, hiring Plaintiff, continuing to accept services from Plaintiff, and inducing Plaintiff to continue his employment.

54.     Plaintiff alleged in the Amended Complaint a claim against Shriani for Relief from Fraudulent Transfer under Minn. Stat. § 513.44, but the Court finds that Plaintiff has not presented sufficient evidence to enter judgment against Shriani under this theory.

## Minn. Stat. § 513.45 Relief From Fraudulent Transfer

55.     Plaintiff is a "creditor" of Defendant PDI within the meaning of Minn. Stat. § 513.45.

56.     Plaintiff is a creditor with a "claim" against Defendant PDI within the meaning of Minn. Stat. § 513.45.

57.     Defendant PDI is a "debtor" within the meaning of Minn. Stat. § 513.45.

58.     Defendant PDI does not deny that it made a "transfer" within the meaning of Minn. Stat. § 513.46.

59.     Defendant PDI does not deny that it transferred all or substantially all of its assets to Defendant IMI without receiving a reasonably equivalent value in exchange for the transfer.

8

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

60.     Defendant PDI does not deny that it was insolvent at the time of the transfer or became insolvent as a result of the transfer.

61.     Plaintiff alleged in the Amended Complaint claims against Shriani for Relief from Fraudulent Transfer under Minn. Stat. § 513.45, but the Court finds that Plaintiff has not presented sufficient evidence to enter judgment against Shriani under this theory.

### Successor Liability

62.     Defendant PDI refused to pay Plaintiff wages and expense reimbursements owed to Plaintiff stating that it was unable to pay such amounts.

63.     Defendant PDI does not deny that it has transferred substantially all of its assets to Defendant IMI, who assumed business operations with the same ownership, management, employees, office, equipment, phone number, and clients.

64.     Defendants PDI and IMI do not deny that Defendant PDI's transfers to Defendant IMI were entered into fraudulently to escape obligations to creditors, including Plaintiff.

65.     As a result of the fraudulent transfers, Defendant IMI is liable as a successor to the liabilities and obligations of Defendant PDI with respect to Plaintiff.

66.     Plaintiff alleged in the Amended Complaint claims against Shriani for successor liability, but the Court finds that Plaintiff has not presented sufficient evidence to enter judgment against Shriani under this theory.

### Piercing the PDI Corporate Veil

67.     Defendant Algoo has not denied that she operated Defendant PDI without sufficient capitalization for purposes of corporate undertaking.

68.     Defendant Algoo operated Defendant PDI without sufficient capitalization for paying the compensation and expense reimbursements owed to Plaintiff.

69.     Defendant Algoo has not denied that she operated Defendant PDI while failing to

9

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

observe corporate formalities.

70.      Defendant Algoo has not denied that she knew or should have known Defendant PDI was insolvent at the time Plaintiff was made the offer of employment.

71.      Defendant Algoo has not denied that she knew or should have known Defendant PDI remained insolvent during the course of Plaintiff's employment with Defendant PDI.

72.      Defendant Algoo has not denied that she operated Defendant PDI merely as a façade for her individual dealings.

73.      Defendant Algoo told Plaintiff that the reason he had not been paid was because PDI was waiting for payment from insurance companies.  Algoo promised that PDI would pay Plaintiff upon receipt of this money.

74.      If Defendant Algoo is allowed to rely upon the limitations of liability afforded under Minnesota state law with respect to corporations, injustice or fundamental unfairness to Plaintiff will occur.

75.      Plaintiff is entitled to judgment against Defendant Algoo personally for the amount of damages that PDI owes to Plaintiff, plus interest allowed by law.

## Damages

76.      Plaintiff is entitled to judgment against Defendants PDI, IMI, and Algoo, in the amount of $43,397.50, plus interest allowed by law, consisting of:

a.      Unpaid wages and overtime in the amount of $16,418.24;

b.      Mileage reimbursements in the amount of $496.00;

c.      Liquidated damages pursuant to 29 U.S.C. § 216(b) in the amount of $4,483.26;

d.      Civil penalties pursuant to Minn. Stat. §§ 177.27, subds. 7-8 in the amount of $12,000.00; and

10

Filed in Fourth Judicial District Court
1/29/2013 3:20:14 PM
Hennepin County Civil, MN

e.    Attorney's fees and costs pursuant to 29 U.S.C. § 216(b), Minn. Stat. §§ 177.27, subd. 10, and 181.171, subd. 3 in the amount of $10,000.00.

## ORDER:

IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for default judgment is GRANTED against Defendants PDI, IMI, and Algoo.

2.    Plaintiff's motion for default judgment is DENIED against Defendant Shriani.

3.    Judgment in the amount of $43,397.50 shall be entered in favor of Plaintiff and against Defendants PDI, IMI, and Algoo, jointly and severally.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: ___1/25/13___

BY THE COURT:

_____
Bruce A. Peterson
Judge of District Court, Hennepin County

### JUDGMENT

I HEREBY CERTIFY THAT THE ABOVE ORDER
CONSTITUTES THE ENTRY OF JUDGMENT OF THIS COURT

MARK S. THOMPSON, COURT ADMINISTRATOR

BY _____ DEPUTY

DATED 2-1-13 (SEAL)

11

**U.S. Department of Labor**
Wage and Hour Division



U.S. Wage and Hour Division
(Revised July 2008)

# Fact Sheet #17O:  Technologists and Technicians and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA)

The FLSA requires that most employees in the United States be paid at least the federal minimum wage for all hour worked and overtime pay at time and one-half the regular rate of pay for all hours worked over 40 in a workweek.  However, Section 13(a)(1) of the FLSA provides an exemption from both minimum wage and overtime pay for employees employed as bona fide executive, administrative, professional and outside sales employees.  Section 13(a)(1) and Section 13(a)(17) also exempts certain computer employees.  To qualify for exemption, employees must meet certain tests regarding their job duties and be paid on a salary basis at not less than $455 per week.

## Technologists and Technicians

Technologists and technicians, such as engineering technicians, ultrasound technologists, licensed veterinary technicians, avionics technicians and other similar employees are not exempt under Section 13(a)(1) from the minimum wage and overtime requirements of the FLSA because they generally do not meet the requirements for the learned professional exemption.  To qualify for the learned professional employee exemption, all of the following tests must be met:

- The employee must be compensated on a salary or fee basis (as defined in the regulations) at a rate not less than $455 per week;
- The employee's primary duty must be the performance of work requiring advanced knowledge, defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment;
- The advanced knowledge must be in a field of science or learning; and
- The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

Technologists and technicians do not meet these requirements for the learned professional exemption because they do not work in occupations that have attained recognized professional status, which requires that an advanced specialized academic degree is a standard prerequisite for entrance into the profession.

## Where to Obtain Additional Information

For additional information, visit our Wage and Hour Division Website: http://www.wagehour.dol.gov and/or call our toll-free information and helpline, available 8 a.m. to 5 p.m. in your time zone, 1-866-4USWAGE (1-866-487-9243).  This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations.

U.S. Department of Labor
Frances Perkins Building
200 Constitution Avenue, NW
Washington, DC 20210

1-866-4-USWAGE
TTY: 1-866-487-9243
Contact Us



EXHIBIT
S

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

---

Joshua Peterson, Jennifer Miller, Alicia
Griffin, Katie Stone, and Jennifer Schauls,

        Plaintiffs,

    vs.

Premier Diagnostic Imaging, Inc.,
Integrity Medical Imaging, LLC,
Minnesota Medical Imaging, LLC, Kim
Algoo a/k/a Khemwattie Singh-Algoo, Amy
Gaston, Mark Burgmeier, and Neeraj B.
Chepuri,

        Defendants.

Case Type:  Employment

Court File No. _____

---

### CERTIFICATE OF REPRESENTATION AND PARTIES

---

**LAWYER FOR PLAINTIFFS:**

Joshua Peterson
Jennifer Miller
Alicia Griffin
Katie Stone
Jennifer Schauls

Craig W. Trepanier, Esq.
MN Atty. ID No. 250776

Kelly M. Fiege, Esq.
MN Atty. ID No. 0392178

Trepanier & MacGillis P.A.
8000 Flour Exchange Building
310 Fourth Avenue South
Minneapolis, MN 55415
Phone: 612-455-0500
Fax: 612-455-0501

**LAWYER FOR DEFENDANTS:**

Premier Diagnostic Imaging, Inc.
10800 Lyndale Avenue South, Suite 150
Bloomington, MN 55420
Phone: 952-955-8010
Attorney: Unknown

Integrity Medical Imaging, LLC
1625 #A Hennepin Avenue
Minneapolis, MN 55403
Phone: 952-955-8010
Attorney: Unknown

Minnesota Medical Imaging, LLC
2110 Nicollet Avenue South, Suite 103
Minneapolis MN 55404
Phone: 612-354-3360
Attorney: Unknown

1

Kim Algoo a/k/a Khemwattie Singh-Algoo
13240 Quebec Avenue
Savage, MN 55378
Phone: 612-964-1810
Attorney: Unknown

Amy Gaston
7408 Washburn Avenue S.
Minneapolis, MN 55423
Phone: 612-315-4346
Attorney: Unknown

Mark Burgmeier
12778 Grouse Street NW
Coon Rapids, MN 55448
Phone: 763-208-1556
Attorney: Unknown

Dr. Neeraj B. Chepuri
1221 Nicollet Avenue, Suite 600
Minneapolis, MN 55403
Phone: 612-573-2200
Attorney: Unknown

Dated: May 8, 2013.

**TREPANIER & MACGILLIS P.A.**

By: _____

Craig W. Trepanier, Atty. Reg. No. 250776
Kelly M. Fiege, Atty. Reg. No. 0392178
8000 Flour Exchange Building
310 Fourth Avenue South
Minneapolis, MN 55415
Phone: 612-455-0500
Fax: 612-455-0501
www.trepanierlaw.com

**ATTORNEYS FOR PLAINTIFFS
JOSHUA PETERSON, JENNIFER
MILLER, ALICIA GRIFFIN, KATIE
STONE, AND JENNIFER SCHAULS**

2